■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES RICHARD, Appellant. [817 NYS2d 698]—

Kane, J. Appeal from a judgment of the Supreme Court (Teresi, J.), rendered October 22, 2002 in Albany County, upon a verdict convicting defendant of the crimes of kidnapping in the second degree, assault in the second degree (two counts) and coercion in the first degree (three counts).

After learning that defendant was sexually involved with co-defendant Shameeka Lewis, the victim created and distributed a flyer stating that defendant had AIDS. When defendant arrived at an apartment where the victim was visiting friends, the victim locked herself in a room. Defendant kicked the door open and threatened the victim with bodily harm while brandishing a knife. He then called friends and relatives to the apartment to watch him humiliate the victim. Defendant ordered the victim into a bathtub while he defecated, then permitted a cousin to videotape the victim obeying defendant's orders, given while he held the knife and a pistol, to perform humiliating acts with defendant's feces.

Defendant discussed his plan to make the victim engage in mouth-to-anus contact with Lewis. He led the victim from the apartment to his vehicle at gunpoint and by pulling her hair, placing her in the back seat between himself and another person. The vehicle, containing defendant, the victim, three other adults and two of defendant's minor children, traveled to Lewis's apartment. Once there, defendant led the victim inside at gunpoint, ordered her to strip naked, fastened her to a pole in the basement with duct tape and stuffed a sock in her mouth. After leaving her alone in the dark basement for approximately 15 minutes, during which time she urinated on herself, defendant returned with several individuals, including Lewis. Lewis

and her roommate brought two BB guns. Defendant sat in a chair directly in front of the victim, with the knife and pistol on his lap, and asked her questions. Codefendant Taurean Holland produced an electric stun gun which defendant used twice to shock the victim on her abdomen, causing welts. Despite the victim's crying and denying some of defendant's accusations, he ordered Lewis to shoot the victim with a BB gun when he received answers that he did not like. Lewis shot the victim in the breast, then handed the gun to defendant, who shot her in the stomach, with both shots breaking the skin and drawing blood. At defendant's direction, Holland then cut the victim loose from the pole and everyone went upstairs.

Defendant, still armed with the pistol, ordered the victim, still naked, to engage in mouth-to-anus contact with Lewis, which she did. The victim was then led into the kitchen and told to lie on her back, where defendant ordered her to engage in sexual-type conduct with his dog. When she resisted, he put the pistol to her head until she complied with his demands. Throughout this ordeal, the other individuals present took pictures and videotaped the victim; defendant made them rewind the video if anyone mentioned the names of the participants. Finally, while defendant permitted the victim to get dressed, he threatened that if she humiliated him again he would circulate the photographs and video to humiliate her.

After the victim escaped and contacted police, defendant returned to Lewis's apartment and advised her to clean up the crime scene. Lewis and her roommate gave defendant all of the evidence they could find. He later brought the two women to a motel, telling them that the police were looking for them. Defendant then went to Virginia and Connecticut, where he was apprehended by police. Police located an electric stun gun on Holland and a BB gun, a piece of duct tape, BBs and an air cartridge for a BB gun in Lewis's apartment. The photographs, video and pistol were never recovered. Defendant was charged with, and found guilty of, kidnapping in the second degree, assault in the second degree (two counts) and coercion in the first degree (three counts). Following Supreme Court's denial of his CPL 330.30 motion and imposition of maximum consecutive sentences, defendant appeals.

The convictions are not against the weight of the evidence. While defendant implies that the jury should have discredited the victim's testimony entirely because her videotaped deposition with defense counsel contradicted her trial testimony, the jury was permitted to make its own credibility determinations and believe part or all of a witness's testimony. The evidence,

including the victim's testimony, photographs, medical records, testimony of a codefendant, and the expert testimony regarding stun guns, permitted the jury to find that the victim suffered physical injury, as defined in Penal Law § 10.00 (9), when she was shot with a BB gun and shocked with the stun gun. Weighing the evidence regarding the stun gun, including the manner in which it was used, it was not unreasonable for the jury to find that the stun gun was a dangerous instrument (*see* Penal Law § 10.00 [13]; § 120.05 [2]; *People v MacCary*, 173 AD2d 646, 647 [1991], *lv denied* 78 NY2d 969 [1991]; *but see People v Maio Ni*, 293 AD2d 552, 552 [2002]; *People v Nelson*, 292 AD2d 397, 398 [2002]).

Supreme Court correctly refused to charge a lesser degree of assault regarding the BB gun, but erred in refusing to charge the lesser included offense regarding the stun gun. Because defendant specifically requested that the court charge assault in the third degree as a lesser included offense of each count of assault in the second degree, the court was required to give such charges if any reasonable view of the evidence supported them (*see* CPL 300.50 [1], [2]). To establish his entitlement to these charges as lesser included offenses, defendant had to demonstrate that it is impossible to commit the greater crime without also committing the lesser offense, and that a reasonable view of the evidence could support a finding that defendant committed the lesser offense but not the greater (*see* CPL 300.50 [1]; *People v Van Norstrand*, 85 NY2d 131, 135 [1995]; *People v Glover*, 57 NY2d 61, 63 [1982]). The People concede that it is impossible to commit assault in the second degree under Penal Law § 120.05 (2) without simultaneously committing assault in the third degree under Penal Law § 120.00 (1), thus satisfying the first prong.

As to the second prong, the result differs for the two assault charges here. The BB gun was a loaded weapon which discharged a shot that was readily capable of producing serious physical injury, making it a deadly weapon (*see* Penal Law § 10.00 [12]; *People v Madeo*, 103 AD2d 901, 902 n [1984]; *People v Jones*, 54 AD2d 740, 740 [1976]; *but see People v Bowman*, 133 AD2d 701 [1987], *lv denied* 70 NY2d 953 [1988]). The only reasonable view of the evidence is that if defendant assaulted the victim with the BB gun, he assaulted her with a deadly weapon. Therefore, under this count, Supreme Court correctly refused to charge a lesser included offense. Regarding the second assault charge, however, a reasonable view of the evidence could support a finding that the stun gun was not readily capable of causing serious physical injury under the circumstances in which it

was used.* If the jury accepted this view of the evidence, thus finding that the stun gun was not a dangerous instrument (*see* Penal Law § 10.00 [10], [13]), it could have acquitted defendant of assault in the second degree but found him guilty of assault in the third degree. Therefore, the court should have granted defendant's request to charge the lesser included offense on that count.

The conceded *Brady* violation did not deprive defendant of a fair trial. When County Court (Herrick, J.) discovered, on the day set for trial, that the People had not disclosed grand jury testimony of one codefendant which the court deemed exculpatory, it postponed the trial for several weeks to permit defendant to locate and interview the codefendant, then plan trial strategy accordingly. To establish deprivation of his fair trial rights, defendant must demonstrate prejudice flowing from the *Brady* violation (*see People v Atkinson*, 141 AD2d 921, 923 [1988]). Reversal is not required where the defendant had an opportunity to use the improperly-withheld material (*see People v Cortijo*, 70 NY2d 868, 870 [1987]). Defendant did not allege at trial, or on appeal, that he could not locate the codefendant or secure his exculpatory testimony. Even if the codefendant were unavailable, defendant could have attempted to introduce his grand jury testimony if it were truly exculpatory and carried sufficient indicia of reliability (*compare People v Watson*, 14 AD3d 721, 722 [2005], *lv denied* 4 NY3d 857 [2005]). Because he had an opportunity to cure the *Brady* violation but made no attempt to use the withheld material, reversal is not required.

Reversal is also not required based on Supreme Court's comments during the trial. Although some of the court's comments to defense counsel in front of the jury "would better have been left unsaid, the jury was not prevented from arriving at an impartial judgment on the merits" (*People v Moulton*, 43 NY2d 944, 946 [1978]).

Assuming, without deciding, that the stenographer was required pursuant to Judiciary Law § 295 to transcribe the precharge conference, defendant failed to show any prejudice he suffered as a result of that conference not being transcribed (*see People v Garey*, 243 AD2d 844, 845 [1997]). In any event, defendant could have preserved any arguments concerning the jury charge by objecting at the time that Supreme Court gave the charge, as he did regarding his requests for lesser included offense charges. Based on defendant's failure to object to the por-

---

* The victim's testimony concerning her reaction to the stun gun was substantially different from the expected reaction as testified to by the People's expert.

tions of Supreme Court's charge regarding the burden of proof, reasonable doubt and the individual crimes, his arguments that the charge inadequately addressed those topics is unpreserved (*see People v Gunney*, 13 AD3d 980, 983 [2004], *lv denied* 5 NY3d 789 [2005]).

Many of defendant's other contentions will not be fully addressed because they are unpreserved for our review. The argument that the merger doctrine precludes the kidnapping conviction was not raised until his postverdict CPL 330.30 motion, too late to preserve this issue (*see People v Padro*, 75 NY2d 820, 821 [1990]; *People v Rosado*, 26 AD3d 532, 533 [2006]). In any event, the assaults were clearly separate and distinct acts, not committed in furtherance of the kidnapping (*see People v Gonzalez*, 80 NY2d 146, 153 [1992]; *People v O'Connor*, 21 AD3d 1364, 1365 [2005], *lv denied* 6 NY3d 757 [2005]). Defendant failed to object to comments, now alleged as improper, made by the prosecutor in his opening statement and summation, rendering them unpreserved (*see People v Lamont*, 21 AD3d 1129, 1131 [2005], *lv denied* 6 NY3d 835 [2006]). In any event, even if some of the prosecutor's comments were improper, they were not so pervasive as to deprive defendant of a fair trial (*see People v Hendrie*, 24 AD3d 871, 873 [2005], *lv denied* 6 NY3d 776 [2006]). Although a prosecutor is required to correct a witness's misstatement regarding consideration given in exchange for testimony (*see People v Savvides*, 1 NY2d 554, 556-558 [1956]; *People v Stanley*, 23 AD3d 683, 686 [2005], *lv denied* 6 NY3d 818 [2006]), the record fails to support defendant's conclusory allegations that the victim was given any consideration for her testimony.

Defendant's sentence was proper. His argument that the sentence exceeds the aggregate maximum pursuant to Penal Law § 70.30 is misplaced, as Supreme Court did not address the aggregate maximum and the Department of Correctional Services will administratively recalculate the sentence to reflect the legally authorized limit (*see People v Jackson*, 25 AD3d 1012, 1014 [2006]; *People v Sheppard*, 273 AD2d 498, 500 [2000], *lv denied* 95 NY2d 908 [2000]). Kidnapping in the second degree involves "abduct[ing] another person" (Penal Law § 135.20), while assault in the second degree involves causing physical injury by means of a deadly weapon or dangerous instrument with the intent to cause such injury (*see* Penal Law § 120.05 [2]). The court legally imposed consecutive sentences because the crimes here involved separate and distinct actions (*see People v Wright*, 1 AD3d 707, 709 [2003], *lv denied* 1 NY3d 636 [2004]; *see also* Penal Law § 70.25 [2]; *but see People v Williams*, 5 AD3d 514, 515 [2004], *lv denied* 2 NY3d 809 [2004]).

Crew III, J.P., Carpinello and Rose, JJ., concur.

Spain, J. (concurring in part and dissenting in part). I concur with all aspects of the majority's decision except that part which affirms defendant's conviction of assault in the second degree as charged in count two of the indictment. Because I believe that what we know generically as a BB gun is not a deadly weapon as statutorily defined and, further, that a reasonable view of the evidence could support a finding that the handgun described throughout the record as a "BB gun" was not used as a dangerous instrument, I would hold that defendant was entitled to a charge on the lesser included offense of assault in the third degree.

Defendant was charged with intentionally causing injury to the victim "by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]). The definition of a "[d]eadly weapon" includes "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged" and lists other specific weapons— other than firearms—which constitute deadly weapons, such as certain kinds of knives, etc. (Penal Law § 10.00 [12]). A "[d]angerous instrument" is defined as "any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]).

As the majority points out, some precedent exists for the proposition that an "air pistol" is a deadly weapon (see People v Jones, 54 AD2d 740, 740 [1976]; see also People v Madeo, 103 AD2d 901, 902 n [1984] [citing with approval, in dicta, People v Jones, supra]). The record in this case is insufficient for us to identify with particularity the exact nature of the weapon used by defendant, but it is consistently described as a "BB gun" and precedent exists which suggests that a BB gun is not a deadly weapon (see People v Bowman, 133 AD2d 701 [1987], lv denied 70 NY2d 953 [1988]). In my view, the type of pump-action "BB gun" formerly marketed for use by children is not a "deadly weapon" as defined by the Penal Law but could, under the correct circumstances, be a "dangerous instrument."

Thus, although I believe that legally sufficient evidence exists to support defendant's conviction of assault in the second degree because a factfinder could reasonably conclude that a BB gun shot at point blank range toward a bound individual facing the shooter is an instrument "which, *under the circumstances in which it is used* . . . is readily capable of causing . . . serious physical injury" (Penal Law § 10.00 [13] [emphasis added]),

that is not the issue on appeal but, rather, defendant's entitlement to charge. On that issue, I believe that a reasonable factfinder could reach the opposite conclusion and find that, unless shot at a particularly vulnerable spot—such as an eye—a BB gun is not "readily capable" of causing serious injury. Accordingly, because defendant requested a charge of assault in the third degree which is a lesser included offense of assault in the second degree, and because a reasonable view of the evidence exists which could support the finding that defendant committed the lesser offense—i.e., he intentionally caused injury (*see* Penal Law § 120.00)—but did not commit the greater—i.e., that the BB gun, as used under these circumstances, was not readily capable of causing serious injury (*see* Penal Law § 120.05 [2])—defendant's request under this count should have been granted (*see* CPL 300.50 [1], [2]; *People v Van Norstrand*, 85 NY2d 131, 135 [1995]).

Ordered that the judgment is modified, on the law, by reversing defendant's conviction of assault in the second degree under count three of the indictment; matter remitted to the Supreme Court for a new trial on said count; and, as so modified, affirmed.