IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2012-0424 |
|  | ) | DEPARTMENT A |
| Appellee, | ) |  |
|  | ) | O P I N I O N |
| v. | ) |  |
|  | ) |  |
| AMY KAY GUSTAFSON, | ) |  |
|  | ) |  |
| Appellant. | ) |  |
|  | ) |  |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20113700001

Honorable Jose H. Robles, Judge
Honorable Richard D. Nichols, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and Amy M. Thorson                    Tucson
                                                  Attorneys for Appellee

Harriette P. Levitt                                          Tucson
                                          Attorney for Appellant

H O W A R D, Chief Judge.

¶1          Following a jury trial, appellant Amy Gustafson was convicted of
aggravated robbery, kidnapping, assault, second-degree burglary, aggravated assault on

an incapacitated victim, and theft of a credit card. The jury found the allegations of dangerousness proven as to the aggravated robbery and kidnapping charges, and the trial court imposed concurrent sentences, the longest of which is 10.5 years. Gustafson appeals solely from the convictions and sentences for aggravated robbery and kidnapping, for which she received enhanced sentences based on the use of a "Taser" stun gun. She argues the court improperly denied her motion to strike the allegation of dangerous nature, filed as part of her motion for a judgment of acquittal, and asks that we vacate the dangerous nature findings and the sentences imposed for aggravated robbery and kidnapping and remand for resentencing without the dangerous nature enhancement. Because the trial court did not err, we affirm.

**Factual and Procedural Background**

¶2        "We view the facts in the light most favorable to sustaining the convictions." *State v. Robles*, 213 Ariz. 268, ¶ 2, 141 P.3d 748, 750 (App. 2006). In October 2011, a male intruder, later identified as Albert Lewis,[1] kicked in the door of the victim's home. Lewis "tased" the victim, and she "immediately dropped . . . [a]nd [could not] recall how long [she was] out." The victim testified that Lewis "got on top" of her, tied her hands behind her back, and placed duct tape on her ankles, eyes, and mouth. Although she was barely able to "see through the bottom of the duct tape," the victim realized there was another person in the room whispering to Lewis; she recognized the voice of the other individual as Gustafson, who was a previous acquaintance. The victim

---

[1]Lewis and Gustafson were tried in separate proceedings.

2

testified "[Lewis] tried to pick me up and I got dropped on my head on my polished concrete floor and then [I was] rolling back to try to get back up, my head was backing off and I saw [Gustafson]." The victim said, "Amy?" and "got tased [and] fell to the floor again." The victim was then "picked up" and "thrown" onto her bed, "tied with the Ethernet cable around [her] neck and upper arms" binding her to the headboard of her bed, and a blanket was placed over her head.

¶3 "[A]s soon as [she] was tased," the victim told the perpetrators she had a pacemaker, something Gustafson already "knew," and stated, "[Y]ou don't want to kill me, you do not want to kill me." The victim was shocked with the stun gun "a minimum of three, maybe even four, five times," and testified that she "[a]bsolutely" was shocked with the stun gun after she had told Gustafson and Lewis she had a pacemaker. The victim testified the intruders then looked at the bank statements in her desk and asked her how to "get" the money reflected on the statements; she provided "fake" bank information and believed she "might have been tased at some point" while she was answering the questions about her banking account. Lewis and Gustafson remained in the victim's home for approximately 1.5 to two hours, after which it took the victim "[a]t least an hour and a half to two hours" to free herself and call the police. When the police arrived, she gave them a description of Lewis and provided Gustafson's name. The victim declined medical attention.

¶4 The lead detective in the case testified that during a search of Gustafson's home, officers discovered several items, including duct tape, a box containing a stun gun and the victim's purse, and other items belonging to the victim. During his testimony, the

3

detective described having found a box with a stun gun which also contained "the probes on top of the [stun gun]." He further explained: "And the way this device works, this particular one, . . . you plug it into the wall to charge it. . . . [A]nd you press the button and you contact the skin, preferably on the person that you want to tase, and it gives them a shock."

¶5　　　　During the oral argument on her written motion for a judgment of acquittal/strike allegation of dangerous nature offense, Gustafson asked, inter alia, that the court strike the dangerous nature allegation regarding the aggravated robbery, kidnapping, and aggravated assault counts, and that it present the aggravated assault count to the jury as simple assault.[2] Acknowledging that a stun gun could constitute a dangerous instrument, Gustafson nonetheless argued that because the victim did not sustain any serious injuries here, the stun gun did not rise to that level. The state pointed out that the victim, who had a heart condition, had "lost the ability to stand" and had fallen onto a concrete floor after she was first shocked with the stun gun. Thus, the state argued, it was up to the jury to decide if the stun gun, as used here, constituted a dangerous instrument. The trial court denied the Rule 20, Ariz. R. Crim. P., motion as to all counts and subsequently denied the motion to strike the dangerous nature allegations.

---

[2]Gustafson pointed out to the trial court that the judge in Lewis's trial "had stricken the allegation of dangerous nature, finding that a taser does not constitute a deadly weapon or dangerous instrument." And we granted Gustafson's request that we take judicial notice of the related rulings in Lewis's case. However, as Gustafson correctly argued below, the ruling in Lewis's case was not binding on the trial court here. *See State v. Mendoza-Tapia*, 229 Ariz. 224, ¶ 7, 273 P.3d 676, 679 (App. 2012) (law of case doctrine inapplicable in case involving different defendant, judge and trial).

4

The court noted, however, that it would give the jury a "serious physical injury" instruction and provide lesser-included offenses for unlawful imprisonment and assault.

**Dangerous Nature Allegations**

¶6      On appeal, Gustafson claims the trial court erred in denying her Rule 20 motion for a judgment of acquittal on the dangerous nature allegations of the aggravated robbery and kidnapping charges.[3] She maintains a stun gun is not a deadly weapon or dangerous instrument under Arizona law, asserting this is a matter of first impression, and further argues the state did not present substantial evidence whether a stun gun, as used here, would qualify as a dangerous instrument.[4] Gustafson further contends that, in the absence of evidence that the victim sustained any physical injury, the victim had no basis to support her fear that she might suffer a heart attack or to conclude that "the manner in which the taser was used" rendered it "readily capable of causing death or serious physical injury." (Emphasis omitted.) Therefore, Gustafson contends, the record contained no basis upon which to send a dangerousness allegation to the jury nor did the evidence support the jury's finding of a dangerous offense. She thus concludes the court erred in enhancing her sentences pursuant to A.R.S. § 13-704 (sentencing statute for dangerous offenders).

---

[3]Although the state also asserted a dangerousness allegation as to the aggravated assault charge, the jury found Gustafson guilty only of the lesser-included offense of assault on that count.

[4]For purposes of our analysis, we consider only whether the trial court properly permitted the jury to determine whether a stun gun was a dangerous instrument, and not whether it was a deadly weapon.

5

¶7        We review de novo the denial of a motion for a judgment of acquittal. *State v. Tucker*, 231 Ariz. 125, ¶ 27, 290 P.3d 1248, 1261 (App. 2012). On a motion for a judgment of acquittal "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Parker*, 231 Ariz. 391, ¶ 70, 296 P.3d 54, 70 (2013) (emphasis omitted), *quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As long as the record contains substantial evidence establishing the elements of the offense, a motion for a judgment of acquittal must be denied. *See id.* Substantial evidence is "'such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. West*, 226 Ariz. 559, ¶ 16, 250 P.3d 1188, 1191 (2011), *quoting State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990).

¶8        To prove Gustafson committed aggravated robbery and kidnapping in a manner that would qualify those offenses as "dangerous," the state was required to establish that she used a deadly weapon or dangerous instrument to commit the offenses as defined by A.R.S. §§ 13-105(13), 13-1902, 13-1903, and 13-1304(A).[5] A "dangerous offense" for sentence enhancement purposes is one that involves, in relevant part, "the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument." § 13-105(13). A "dangerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of

_____

[5]Because Gustafson appears to challenge only the dangerous nature findings, rather than the grounds for the underlying convictions, we do not address the latter.

causing death or serious physical injury." § 13-105(12). "Serious physical injury" includes "physical injury [impairment of physical condition] that creates a reasonable risk of death, or that causes . . . serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." § 13-105(33), (39).

¶9        Gustafson asserts no Arizona cases define a stun gun as a dangerous instrument as a matter of law, and we are not aware of any. *Cf. Marquez v. City of Phx.*, 693 F.3d 1167, 1176 (9th Cir. 2012) (noting no Arizona law has found use of "electronic control device" to be deadly force); *see State v. Emerson*, 171 Ariz. 569, 570-71, 832 P.2d 222, 223-24 (App. 1992) (finding as a matter of first impression, loaded pellet gun is dangerous instrument for sentence enhancement purposes). However, "if an instrument is not inherently dangerous as a matter of law, like a gun or knife, the jury can determine whether the defendant used the object in such a way that it became" a dangerous instrument. *State v. Gordon*, 161 Ariz. 308, 310, 778 P.2d 1204, 1206 (1989), *citing State v. Bustamonte*, 122 Ariz. 105, 107, 593 P.2d 659, 661 (1979) (jury, rather than court, must determine whether manner in which scissors used rendered them a deadly weapon).[6] Accordingly, if an item is not inherently dangerous as a matter of law, it is up to the jury to determine whether it became a dangerous instrument based on how a defendant used it. *State v. Schaffer*, 202 Ariz. 592, ¶¶ 9, 18, 48 P.3d 1202, 1205, 1206

---

[6]Although *Bustamonte* applied a different definition of a deadly weapon (inherently dangerous weapon defined as "instrument which, when used in the ordinary manner contemplated by its design and construction, will or is likely to, cause death or great bodily harm"), than the current one, *see* A.R.S. § 13-105(15) (deadly weapon means anything designed for lethal use), the proposition for which *Bustamonte* is cited nonetheless applies here. *See* 122 Ariz. 105, 107, 593 P.2d 659, 661, *quoting State v. Gordon*, 120 Ariz. 172, 176, 584 P.2d 1163, 1167 (1978).

7

(App. 2002) (jury question whether prosthetic device qualifies as dangerous instrument); *see also State v. Caldera*, 141 Ariz. 634, 637, 688 P.2d 642, 645 (1984) ("whether or not an object [inoperable firearm] is a deadly or dangerous weapon is a jury question"); *In re Robert A.*, 199 Ariz. 485, ¶ 11, 19 P.3d 626, 629 (App. 2001) (to prove flare gun was dangerous instrument under circumstances of its use, state required to show it was readily capable of causing death or serious physical injury); *State v. Fatty*, 150 Ariz. 587, 589-90, 724 P.2d 1256, 1258-59 (App. 1986) (court determined jury could find sock constituted dangerous instrument).

¶10        Here, the jury was instructed that a "'[d]angerous instrument' means anything that is readily capable of causing death or serious physical injury under the circumstances in which it is used, attempted to be used or threatened to be used." In addition, the jury was given the following instruction defining a dangerous offense:

> If you find the defendant guilty of aggravated robbery and/or kidnapping and/or, aggravated assault, you must determine whether or not the offense was a dangerous offense. An offense was a dangerous offense if it involved the discharge, use, or threatening exhibition of a deadly weapon or dangerous instrument. The State has the burden of proving beyond a reasonable doubt that the offense was a dangerous offense. Your finding on this issue must be unanimous.

¶11        And, the jury was shown photographs of a "taser," a "[s]ealed bag allegedly containing a Red Taser Box," the concrete floor on which the victim landed after she was first shocked with the stun gun, and photographs of the victim bound with duct tape. In addition, on the verdict forms for aggravated robbery and kidnapping, the jury indicated it had found proven beyond a reasonable doubt "the offense to be of a dangerous nature,

8

involving the use, discharge, or threatening exhibition of a deadly weapon/dangerous instrument."

¶12 Gustafson claims that the stun gun was not a dangerous instrument because "there was no evidence offered, not even a scintilla, to establish that the taser was 'readily capable of causing death or serious physical injury' under the 'circumstances in which it [wa]s used[,]' as required by A.R.S. § 13-105(12)." Gustafson also asserts the state could have, but did not "show[] that the manner of its use made the taser a dangerous instrument," and that the state did not introduce expert testimony on the potential dangers of the repeated use of a stun gun on an individual who had a pacemaker. However, the state produced evidence that Gustafson not only knew that the victim used a pacemaker, but that the victim also had told the intruders this fact and urged them not to "kill" her as a result of shocking her with the stun gun. The intruders nonetheless shocked the victim several times, in the first instance causing her to collapse onto a concrete floor, and later while she was restrained and bound with duct tape and tied to the headboard of her bed while her head was covered with a blanket.

¶13 Based on the evidence presented, combined with the jury's common sense and knowledge, the record contains substantial evidence to send the dangerous nature allegation to the jury, and sufficient evidence for the jury to reasonably find that the way the intruders used, attempted to use, or threatened to use the stun gun rendered it a dangerous instrument. *See Russell v. State*, 832 So. 2d 551, ¶ 4 (Miss. Ct. App. 2002) (even though trial court incorrectly instructed jury as a matter of law that stun gun was deadly weapon, and even if stun gun was not found to be a deadly weapon, "whether or

9

not the repeated use of a stun gun can cause serious bodily injury is an issue the jury can resolve without the necessity of expert testimony"); *see also State v. McLoughlin*, 133 Ariz. 458, 461 n.2, 652 P.2d 531, 534 n.2 (1982) (jurors may rely on own common sense and experience); *State v. Manning*, 224 N.W.2d 232, 236 (Iowa 1974) ("'Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved.'"), *quoting* 75A Am. Jur. 2d *Trial* § 1019 (1974).

¶14 Moreover, to the extent Gustafson suggests that, because "the victim had no significant injuries and had declined medical treatment" the stun gun was not a dangerous instrument, we disagree. Neither § 13-105(12), nor § 13-105(13) requires that serious physical injury actually occur. Rather, § 13-105(12) only requires that the dangerous instrument be readily capable of producing death or serious physical injury in the circumstances in which it is used. In *State v. Molina*, 211 Ariz. 130, ¶¶ 9-10, 118 P.3d 1094, 1097 (App. 2005), we rejected a similar argument that there was "insufficient evidence that . . . ignited alcohol had been used in a manner consistent with the statutory definition of 'dangerous instrument'" merely because the victim did not suffer serious physical injury from the assault. Likewise, because the victim here did not suffer a heart attack or request medical care after the incident does not mean the jury could not find "under the circumstances in which it [was] used, attempted to be used or threatened to be used" the stun gun was "readily capable of causing death or serious physical injury." § 13-105(12); *cf. State v. Borbon*, 146 Ariz. 392, 397, 706 P.2d 718, 723 (1985) (tire iron

10

constituted dangerous instrument even though it was impossible for defendant to shatter the bulletproof glass door he hit with the iron; defendant hit door "so violently that the occupant [of the gas station cashier booth] was concerned that defendant would be able to break down the door and harm him").

¶15 Gustafson essentially asks us to reweigh the evidence, which we will not do. *See State v. Lee*, 189 Ariz. 590, 603, 944 P.2d 1204, 1217 (1997). Instead, we conclude the state presented sufficient evidence from which a reasonable jury could determine the stun gun, as used under the circumstances here, was a dangerous instrument. *See* § 13-105(12); *West*, 226 Ariz. 559, ¶ 16, 250 P.3d at 1191. Accordingly, the trial court did not err in denying the motion for a judgment of acquittal/motion to strike dangerous nature.

¶16 We further note, as did the Supreme Court of Iowa in *State v. Geier*, 484 N.W.2d 167, 171-72 (Iowa 1992), "many courts . . . have deemed it appropriate to characterize stun guns as dangerous or deadly weapons." *See, e.g.*, *United States v. Agron*, 921 F.2d 25, 26 (2d Cir. 1990) (court takes "broad view" of "dangerous weapon," finding stun gun constituted dangerous weapon in drug conspiracy matter); *United States v. Wallace*, 800 F.2d 1509, 1513 (9th Cir. 1986) (stun gun dangerous weapon under Federal Aviation Act of 1958, 49 U.S.C. § 1472(l), because it may produce "great bodily harm"); *People v. Richard*, 817 N.Y.S.2d 698, 702 (N.Y. App. Div. 2006) (weighing the evidence, including manner in which stun gun was used, it was not unreasonable for jury to find it was a dangerous instrument); *People v. MacCary*, 570 N.Y.S.2d 322, 323-24 (N.Y. App. Div. 1991) (prosecution provided sufficient evidence to permit jury to

conclude "stun gun, as used herein, was a dangerous instrument," which was statutorily defined as "any instrument . . . which, under the circumstances in which it is used . . . is readily capable of causing death or other serious physical injury"); *cf. People v. Morillo*, 960 N.Y.S.2d 224, 225 (N.Y. App. Div. 2013) (evidence that defendant merely displayed stun gun legally insufficient to establish "dangerous instrument" element of offense).

**¶17**        Finally, Gustafson argues that, because A.R.S. § 13-701 (setting out aggravating factors), addresses the use of a dangerous instrument in a different subsection than the use of a "remote stun gun," it "appear[s] . . . that the use of a taser under Arizona statutory definitions does not constitute the use of a . . . dangerous instrument." *See* § 13-701(D)(2), (22).  As the state points out, however, the legislature did not place the same limitations upon the use of a remote stun gun as it did on the use of a dangerous instrument.  Section 13-701(D)(2) permits as an aggravating factor the "[u]se, threatened use or possession of a . . . dangerous instrument during the commission of the crime, except if this circumstance is an essential element of the offense of conviction or has been utilized to enhance the range of punishment under § 13-704."  In contrast, there is no similar provision in § 13-701(D)(22) (use of remote stun gun as aggravating factor). This leads only to the inference that the legislature did not intend to treat them equally. Moreover, nothing in the statutory definition of a dangerous instrument, *see* § 13-105(12), would suggest the legislature did not intend that a remote stun gun *not* constitute a dangerous instrument.  *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997) (when "a statute's language is clear and unambiguous, we must give effect to that language and need not employ other rules of statutory construction").

12

**Conclusion**

¶18        For all of these reasons, we affirm Gustafson's convictions and sentences.

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *Garye L. Vásquez*

GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Michael Miller*

MICHAEL MILLER, Judge

13