NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JULIO CESAR CORDOVA-WILKINS, *Appellant.*

No. 1 CA-CR 23-0410
FILED 12-24-2024

Appeal from the Superior Court in Maricopa County
No. CR2022-137158-001
The Honorable Joseph Kiefer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Ashley Torkelson Levine
*Counsel for Appellee*

Mayes Telles, PLLC, Phoenix
By Candy Marrufo
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Anni Hill Foster joined.

**P A T O N**, Judge:

¶1　　　　Julio Cesar Cordova-Wilkins appeals from his conviction for aggravated assault.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2　　　　In September 2022, Cordova-Wilkins was driving to the grocery store.  The victim, Clark,[1] was driving in front of Cordova-Wilkins, but could not turn into the grocery store parking lot because the car in front of him had stalled.  Cordova-Wilkins drove around Clark, nearly colliding with his car, and the two exchanged heated words.

¶3　　　　They both eventually drove into and parked in the store lot.  Clark parked next to Cordova-Wilkins because the parking lot was full.  The two disagreed about what happened next.  Cordova-Wilkins said Clark slammed his door and charged at him.  Clark said that Cordova-Wilkins threatened to kill him.  At some point during the incident, Clark noticed Cordova-Wilkins was holding what looked like a knife and remarked, "That's why you're brave, because you have that knife[.]"  Cordova-Wilkins testified at trial that he was holding a multitool with only the file out and said, "I'll stick you."  A witness overheard someone mention a knife but did not see the knife herself.

¶4　　　　Cordova-Wilkins eventually went into the grocery store and Clark called 911.  Cordova-Wilkins shopped and went home.  He was later arrested at his home.  The State charged him with one count of aggravated assault, a class 3 dangerous felony.

¶5　　　　After a four-day trial, the jury convicted Cordova-Wilkins as charged.  The jury also found the State had proven the dangerousness aggravating circumstance—that the offense involved the discharge, use, or threatening exhibition of a deadly weapon or dangerous instrument.

---

[1] We use pseudonyms to protect the victims' privacy.  *See* Ariz. R. Sup. Ct. 111(i).

Cordova-Wilkins filed a motion for new trial, which the superior court denied.  The court sentenced Cordova-Wilkins to five years' imprisonment, with 55 days of presentence incarceration credit.

**¶6**      Cordova-Wilkins timely appealed.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶7**      Cordova-Wilkins argues (1) the jury instructions misstated the law on aggravated assault, (2) grouping "knife and/or multi-tool" in the jury instructions created a risk of a nonunanimous jury verdict, (3) the aggravation phase jury instructions misstated the law, (4) the aggravation phase jury instructions created a risk of a nonunanimous jury verdict, (5) the superior court erred by not providing the jury a lesser-included offense instruction, and (6) the State improperly commented on his partial silence.

**¶8**      Cordova-Wilkins did not object to these alleged errors at trial; he also did not raise them in his motion for new trial.  We therefore review for fundamental, prejudicial error.  *See State v. Riley*, 248 Ariz. 154, 170, ¶ 24 (2020).  Cordova-Wilkins bears the burden of showing trial error exists, the error is fundamental, and the error caused him prejudice.  *Id.*  Trial errors are fundamental when they (1) go to the "foundation of the case," (2) deprive the defendant of "a right essential to his defense," or (3) are "so egregious that [the defendant] could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

**¶9**      To show prejudice, a defendant must establish that "a reasonable jury could have plausibly and intelligently returned a different verdict" absent the error.  *Id.* at 144, ¶ 31.  The "could have" inquiry is objective and demands an examination of the entire record, "including the parties' theories and arguments as well as the trial evidence."  *Id.*

## I.    The jury instruction on aggravated assault did not misstate the law.

**¶10**      Cordova-Wilkins argues that the final jury instructions on aggravated assault misstated the law by implying that a multitool is, by definition, a deadly weapon or dangerous instrument.

**¶11**      Cordova-Wilkins was charged with aggravated assault under Section 13-1204(A)(2) which states that "[a] person commits aggravated assault if the person commits assault as prescribed by § 13-1203 … [i]f the

person uses a deadly weapon or dangerous instrument." The final jury instructions stated:

> This crime requires proof of the following:
>
> 1. On or about September 29, 2022, the defendant committed an assault by intentionally* placing [Clark] in reasonable apprehension of imminent physical injury*; *and*
>
> 2. The defendant used a knife and/or multi-tool, a deadly weapon* or dangerous instrument*.[2]

¶12 We review de novo whether the superior court "properly instructed the jury, and whether [the] jury instructions properly state the law." *State v. Ewer*, 254 Ariz. 326, 329, ¶ 10 (2023) (citation omitted) (internal quotation marks omitted). "[W]e consider the jury instructions as a whole to determine whether the jury received the information necessary to arrive at a legally correct decision." *Id.* (citation omitted). As previously mentioned, because Cordova-Wilkins failed to object to the alleged error at trial, we review for fundamental error. *Escalante*, 245 Ariz. at 140, ¶ 12.

¶13 The jury instructions, taken as a whole, did not misstate the law or imply that the multitool was a deadly weapon or dangerous instrument thereby relieving the jury of finding a required element of aggravated assault. The court instructed the jury that "the State must prove each element of a charge beyond a reasonable doubt." The instruction then stated that the crime of aggravated assault "require[d] proof" that Cordova-Wilkins "intentionally" placed Clark "in reasonable apprehension of imminent physical injury" and that he "used a knife and/or multitool" as a "deadly weapon or dangerous instrument."

¶14 The instructions provided separate definitions for both "deadly weapon" and "dangerous instrument" to the jury. "'Deadly weapon' means anything designed for lethal use, including a firearm." "'Dangerous instrument' means anything that under the circumstances in which it is used, attempted to be used, or threatened to be used is readily capable of causing death or serious physical injury." The instructions then defined "physical injury" and "serious physical injury" for the jury. These definitions properly instructed the jury on how to determine whether the multi-tool was used in a way that satisfied the requirement of aggravated assault. The instructions made it clear that the jury had to find each of these

---

[2] The asterisks indicate that these terms were defined in the definitions section of the final instructions.

elements proven beyond a reasonable doubt before finding him guilty as charged.  The jury thus received all "the information necessary to arrive at a legally correct decision."  *Ewer*, 254 Ariz. at 329, ¶ 10.

¶15        Therefore, the aggravated assault instruction did not misstate the law by erroneously implying that the multitool was inherently a deadly weapon or dangerous instrument.   No error occurred, let alone fundamental, prejudicial error.

## II.     The jury instruction on aggravated assault did not create a risk of a nonunanimous jury verdict.

¶16        Cordova-Wilkins argues that the final jury instructions, ¶ 11, *supra*, created the risk of a nonunanimous jury verdict because some jurors may have believed he had a knife while others may have believed he had a multitool.  As previously discussed, we "will not reverse unless the court committed error that was both fundamental and prejudicial."  *Escalante*, 245 Ariz. at 140, ¶ 12.

¶17        "In all criminal cases the unanimous consent of the jurors shall be necessary to render a verdict."  Ariz. Const. art. 2, § 23.  While "a jury must find unanimously that the defendant committed a criminal act, a defendant is not entitled to a unanimous verdict on the precise manner in which a crime was committed."  *State v. Delgado*, 232 Ariz. 182, 188, ¶ 20 (App. 2013).  There is a risk of a nonunanimous jury verdict when "the indictment charges more than one offense within a single count.  Such an indictment is commonly referred to as a duplicitous indictment."  *State v. Valentini*, 231 Ariz. 579, 581, ¶ 6 (App. 2013).

¶18        Cordova-Wilkins relies on *State v. Davis*, 206 Ariz. 377 (2003) to support his argument that fundamental, prejudicial error occurred in the aggravated assault jury instruction.  In *Davis*, the defendant was charged with one count of sexual misconduct with a minor occurring on or about a specific date, but the prosecution presented evidence of misconduct that occurred on two separate dates. *Id.* at 388-89, ¶ 51.  Our supreme court held that "[b]ecause we cannot be certain *which offense* served as the predicate for the conviction, we conclude that the real possibility of a non-unanimous jury verdict exists." *Id.* at 390, ¶ 59 (emphasis added).  Here, however, there is no question as to which offense served as the predicate for the conviction because the jury heard evidence about only one alleged incident.  Therefore, the indictment was not duplicitous, and Cordova-Wilkins's reliance on *Davis* is misplaced.

5

¶19 Cordova-Wilkins was charged with a single count of aggravated assault, which can be committed by using either "a deadly weapon or dangerous instrument." A.R.S. § 13-1204(A)(2). A "[d]eadly weapon" is "anything designed for lethal use, including a firearm." A.R.S. § 13-105(15). A "[d]angerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13–105(12). The jury could convict Cordova-Wilkins if it believed he had a knife. *See State v. Gustafson*, 233 Ariz. 236, 239-40, ¶ 9 (App. 2013) (noting a knife is dangerous as a matter of law). Or the jury could convict him if it believed he used a multitool in a way that made it dangerous. *See id.* ("if an item is not inherently dangerous as a matter of law, it is up to the jury to determine whether it became a dangerous instrument based on how a defendant used it."). But Cordova-Wilkins was not entitled to a unanimous verdict on *how* he committed the aggravated assault—only that he committed it using an item that met the definition of deadly weapon or dangerous instrument. *Delgado*, 232 Ariz. 182, 188, ¶ 20.

¶20 Because there was no duplicitous charging that created a risk of a nonunanimous jury verdict as in *Davis*, nor a requirement that the jury unanimously agree on the way he committed the aggravated assault, we find no error, let alone fundamental, prejudicial error.

### III. The aggravation phase jury instruction and verdict form did not misstate the law, create a risk of a nonunanimous jury verdict, or prejudice Cordova-Wilkins.

¶21 Cordova-Wilkins argues the aggravation phase jury instructions, like the final jury instructions, and verdict form misstated the law and created a risk of a nonunanimous jury verdict. The aggravation phase jury instructions stated:

The State has alleged the following aggravating circumstance:

1. The offense involved the discharge, use, or threatening exhibition of a knife and/or multi-tool, a deadly weapon or dangerous instrument.

The verdict form contained the same language. Without the presentation of any additional evidence, the jury unanimously found the aggravating circumstance proven beyond a reasonable doubt.

¶22 Cordova-Wilkins did not object to this instruction or verdict form in superior court so we "will not reverse unless the court committed

error that was both fundamental and prejudicial." *Escalante*, 245 Ariz. at 140, ¶ 12. As we concluded in Sections I and II, *supra*, the insertion of "knife and/or multi-tool" in the instructions and verdict form did not misstate the law or create a risk of a nonunanimous jury verdict.

**¶23** A dangerous offense is "an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury on another person." A.R.S. § 13–105(13). Generally, an allegation of dangerousness must be found by a jury. *See State v. Parker*, 128 Ariz. 97, 98 (1981); *State v. McCray*, 218 Ariz. 252, 257, ¶ 19 (2008). A jury, however, does not need to make a separate dangerousness finding where it is inherent in the crime and thus necessarily reflected in the jury verdict. *See State v. Gatliff*, 209 Ariz. 362, 364, ¶ 12 (App. 2004).

**¶24** As Cordova-Wilkins concedes, dangerousness is inherent in the crime of aggravated assault. *See State v. Suniga*, 145 Ariz. 389, 396 (App. 1985) (holding dangerousness finding "implicit" in guilty verdict for aggravated assault by use of a deadly weapon or dangerous instrument); *State v. Begaye*, 1 CA-CR 23-0180, 2024 WL 2783771, at *5, ¶ 25 (Ariz. App. May 30, 2024) (mem. decision). Thus, Cordova-Wilkins has not shown prejudice because a reasonable jury could not plausibly have reached a different verdict on dangerousness during the aggravation phase when it had found him guilty of aggravated assault, an inherently dangerous crime.

**¶25** We find no error, let alone fundamental, prejudicial error in the aggravation phase jury instructions and verdict form.

## IV. Cordova-Wilkins invited any error regarding the lack of a lesser-included offense instruction.

**¶26** Cordova-Wilkins argues the superior court erred by not providing the jury a lesser-included offense instruction on assault. But even if this was error, he invited the error by rejecting the superior court's offer to include this precise instruction in the final jury instructions.

**¶27** Where the evidence warrants it, a defendant is entitled to a lesser-included offense instruction. *State v. Hulsey*, 243 Ariz. 367, 382, ¶ 53 (2018). We review the decision to provide, or decline to provide, a jury instruction for an abuse of discretion. *State v. Delahanty*, 226 Ariz. 502, 507, ¶ 22 (2011). But when a party has not requested a lesser-included offense instruction, as here, we review the court's failure to provide it only for fundamental, prejudicial error. *Hulsey*, 243 Ariz. at 382-83, ¶ 53. We will not, however, find reversible error if the defendant invited that error. *State*

*v. Logan*, 200 Ariz. 564, 565-66, ¶ 9 (2001). An error is invited when the defendant takes "independent affirmative unequivocal action to initiate the error and did not merely fail to object to the error or merely acquiesce in it." *State v. Lucero*, 223 Ariz. 129, 136, ¶¶ 20-21 (App. 2009).

**¶28** Here, Cordova-Wilkins expressly told the superior court he did not want a lesser-included offense instruction. The superior court included an instruction on simple assault in its initial draft of jury instructions. When the court first asked both Cordova-Wilkins and the State if there were any appropriate lesser-included offense instructions to provide the jury, Cordova-Wilkins expressed no position. But after considering it for a day, his counsel told the court: "the Defense is not going to request the lesser included offense, based off of the — the defenses that — that we've proposed[,]" presumably referring to his self-defense theory. The State responded that it did not think the evidence supported it. The superior court asked again, "So nobody wants me to instruct the jurors on a lesser offense?" Defense counsel replied, "Correct, Judge." The superior court then removed the lesser-included offense from the final jury instructions.

**¶29** Given that Cordova-Wilkins independently and affirmatively invited the error he now contends occurred, because he invited it, he may not "profit from it on appeal," and we will therefore not reverse on that basis. *Logan*, 200 Ariz. at 566, ¶ 11 (citing *State v. Tassler*, 159 Ariz. 183, 185 (App. 1988)); *see also Lucero*, 223 Ariz. at 136, ¶ 20 ("expressly requesting the superior court not to give a lesser-included offense instruction amounts to invited error.").

## V. Cordova-Wilkins's due process rights were not violated by the State's comments on his pre-arrest, pre-*Miranda* partial silence.

**¶30** Cordova-Wilkins argues the State violated his due process rights by improperly using his partial silence against him.

**¶31** During Officer Fitzgerald Mendiola's trial testimony, the State introduced his body-worn camera footage of his interaction with Cordova-Wilkins at his home. The video shows Cordova-Wilkins opening his front door and speaking with law enforcement officers concerning the incident with Clark. After a portion of the video was played, Officer Mendiola testified that he "repeatedly asked [Cordova-Wilkins] if he could step outside and talk with me, which [Cordova-Wilkins] refused multiple times." During the State's closing argument, the prosecutor commented on the same interaction stating, "Why doesn't [Cordova-Wilkins] want to say

his side of the story? There's an opportunity for the police right there, to come out and just simply have a conversation. He doesn't want to do that." The prosecutor later added that Cordova-Wilkins "did not tell his story because it's not true." But the jury was instructed that the lawyers' comments are not evidence and the jury saw the footage for themselves. "It is primarily the province of the jury to determine the credibility of witnesses and to find the facts." *State v. Fischer*, 242 Ariz. 44, 50, ¶ 19 (2017).

¶32 Because Cordova-Wilkins did not object to these statements at trial, we review for fundamental, prejudicial error. *Escalante*, 245 Ariz. at 140, ¶ 12. The State "may not comment on a defendant's post-arrest, post-*Miranda* warnings silence as evidence of guilt." *State v. Ramirez*, 178 Ariz. 116, 125 (1994). Nor can the State comment on a defendant's post-arrest but pre-*Miranda* warnings silence because "[t]he Fifth Amendment gives a person the right to remain silent once in custody, even if *Miranda* warnings have not yet been given. *State v. VanWinkle*, 229 Ariz. 233, 236, ¶ 14 (2012). But the State may comment on a defendant's pre-arrest, pre-*Miranda* warnings silence because no governmental action induced the defendant to remain silent. *See State v. Lopez*, 230 Ariz. 15, 20, ¶ 16 (App. 2012).

¶33 Even assuming that the purpose of Officer Mendiola's and the prosecutor's comments regarding Cordova-Wilkins's refusal to step outside and speak with the officers was to comment on his selective silence, when these interactions occurred, Cordova-Wilkins was not under arrest and had not yet been *Mirandized*. This case, therefore, is not analogous to *State v. Melendez*, which Cordova-Wilkins exclusively relies on to support his argument that the State's comments on his partial silence were improper. 256 Ariz. 14 (App. 2023) (review granted May 7, 2024).

¶34 In *Melendez*, the defendant was taken into custody and *Mirandized*. *Id.* at 20, ¶ 5. Melendez then answered some of the detective's questions but said that he did not want to respond to others. *Id.* at 20, ¶ 6. During cross-examination of the defendant and closing argument, the State repeatedly commented on Melendez's refusal to answer several of the detective's questions. *Id.* at 21, ¶¶ 11-12. The court held "the prosecution may not penalize a suspect who has selectively exercised his right to remain silent in responding to certain questions or requests during *custodial interrogation*." *Id.* at 27, ¶ 30 (emphasis added). The result in *Melendez* therefore rests on the fact that the defendant was in custody and had received *Miranda* warnings.

¶35 Here, law enforcement interacted with Cordova-Wilkins at his home for approximately thirteen minutes before he was arrested.

During that time, Cordova-Wilkins responded to their questions, volunteered information about the incident, and made contradictory statements about whether he pulled a knife or other item out during his altercation with Clark. Officer Mendiola testified, and the State commented in closing on Cordova-Wilkins's refusal to leave his home and talk to law enforcement which occurred *before* he was arrested. This is allowed under *Lopez* and therefore did not amount to fundamental, prejudicial error. Cordova-Wilkins does not contend that the State or its witnesses commented on his silence after he was arrested, in custody, or was provided *Miranda* warnings.

**¶36** Because any comment on Cordova-Wilkins's silence referred to his purported silence before he had received *Miranda* warnings or was in custody, his due process rights were not violated. Thus, we find no fundamental, prejudicial error.

## CONCLUSION

**¶37** We affirm.

