People v Abdullah (2025 NY Slip Op 51881(U))

[*1]

People v Abdullah

2025 NY Slip Op 51881(U)

Decided on June 30, 2025

County Court, Tompkins County

Miller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 30, 2025
County Court, Tompkins County

The People of the State of New York,

against
Ramal B. Abdullah, Defendant.

Ind. No. 70040-24

Ramal B. Abdullah, Defendant, pro se 
Luke Z. Fenchel, Esq., stand-by counsel for Defendant 
Matthew Van Houten, Esq., Tompkins County District Attorney

Scott A. Miller, J.

On May 6, 2025, following a jury trial, the Defendant was convicted of Criminal Possession of a Controlled Substance in the Third Degree (PL §220.16[7]), Criminal Possession of a Controlled Substance in the Third Degree (PL §220.16[1]), Unlawful Fleeing of a Police Officer in a Motor Vehicle in the Third Degree (PL §270.25), and Reckless Driving (VTL §1212).
On June 20, 2025, Defendant, still proceeding pro se, moved pursuant to CPL § 330.30(1) to set aside the verdict. The People filed written opposition on June 29, 2025.
Defendant raises multiple claims, including: (1) judicial misconduct; (2) impairment of defense due to preclusion of a drug counselor witness; (3) denial of a challenge for cause; (4) legal insufficiency of the evidence; (5) denial of preclusion; (6) failure to provide an adverse inference instruction; (7) denial of dismissal under CPL Article 245; and (8) reduction of felony convictions.
For the reasons stated below, the motion is denied in its entirety.
Claim of judicial misconduct:
Defendant alleges judicial misconduct stemming from the Court's isolated and benign comment during the testimony of a defense witness (Alec Trigueno) who identified himself as a "ghost producer." The People are correct in that the Defendant failed to preserve this issue. The Court reproduces the relevant exchange:
"Q. Now, can you please explain for the jury exactly what ghost producing is?
A. Well, ghost producing is basically a producer who makes music for artists and — artists and producers, beats, they make beats for producers and artists who they don't get credit for. That's why they called ghost producers, because they're actually behind the scenes doing the music and they get paid at a cheap rate. They can sell beats from anywhere from 200 to $800 because of the ghost producing and not getting the credits for that music. 
Q. Thank you. Do you have your own studio that you work out of?
A. No, I don't. Usually — I have a couple of friends who own their studios, so usually I go there and I use a sampling machine to make my beats or to record music or to write my songs, and that's how I do my music. 
Q Okay. So, do you make good money from selling beats?
A. Sometimes if I'm — if that's the only thing that I'm doing or the only thing I'm dedicating my time to is that. Usually can make a good quite a bit of money, probably 8,000 to $5,000 a month if I'm doing it fully and I'm consistent with doing it. I have a lot of different connections based on the different genres of music that I do, so, yeah, I would say, yeah, you can.
MR. VAN HOUTEN: I'm going to ask for some — well, I'm going to object to relevancy at this point. 
THE DEFENDANT: I'm getting to that. 
THE COURT: Right now there doesn't appear to be any relevance, and this is a complete diversion from anything having to do with the trial, but it's so interesting, I'm going to give you a little leeway just so we see where you're going with it. There's going to have to be some relevancy established. 
MR. VAN HOUTEN: That's why I waited. 
THE COURT: I'm thinking of those poor ghost producers that didn't get any money. We have some Gen X's out there. Milli Vanilli, does that ring any bell?
Q: Can you name a few ghost producers that you work with?
MR. VAN HOUTEN: Objection, relevance. 
THE COURT: Sustained, sustained. It's got to be tied into this case of Mr. Trigueno's connection to you and this case. 
THE DEFENDANT: Okay. 
THE COURT: Not other ghost producers that he works with. I know you're headed somewhere with this, Mr. Abdullah, and I'm giving you that leeway."
The Court's comment was a singular moment of light-hearted banter. The comment was brief, isolated, and friendly in tone. It did not disparage the witness or the Defendant, nor did it suggest any opinion on the merits of the case. The remark did not express bias, nor did it prejudice either party. The Court recalls that several jurors smiled and the Court is confident that this moment of levity landed lightly in a friendly and impartial matter. In fact, the full record of the brief exchange unambiguously reveals that the Court was actually giving the pro se Defendant great latitude and leeway in Defendant's attempt to establish relevancy with respect to the witness over protest of the People. The People, in their opposition papers, also correctly note that, "the record actually demonstrates that the Court was expressing sympathy for 'ghost producers' like the defendant and his witness, Alec Trigueno, because they did not get credit for their work." (People's Affirmation at 3, par. #10.) 
Furthermore, neither Defendant nor stand-by counsel raised an objection. CPL § 330.30(1) permits a trial court to set aside a verdict only upon limited grounds postconviction and pre-sentencing, specifically for errors that, if raised on appeal, would require reversal as a matter of law. See CPL § 330.30(1); People v. Padro, 75 NY2d 820 (1990); In People v. Richard, 30 AD3d 750, 755 (3rd Dept. 2006), the Third Department clearly articulated that "a postverdict CPL 330.30 motion [is] too late to preserve [an] issue." 
Stand-by counsel, Luke Z. Fenchel, Esq., actively communicated with and advised the Defendant on making appropriate objections throughout the trial—so much so that the People [*2]objected to the extent of the role this Court permitted stand-by counsel to play. Despite the People's protest, the Court allowed stand-by counsel to maintain an active advisory role and to communicate with the Defendant throughout the entire trial, including during the Defendant's direct and cross-examination of all witnesses. This Court also notes that the Defendant is an experienced pro se litigator, having defended himself previously in several criminal jury trials. The Defendant, as the entirety of the record reflects, most certainly knew when to make an objection. The absence of an objection at the moment in question confirms that it was not perceived as prejudicial, and in any case the claim is unpreserved. Defendant's unpreserved claim of error with respect to the Court's moment of informality is nothing more than contrived revisionist history. Had the Court observed any negative reaction from the jury, this Court would have immediately issued a curative instruction sua sponte. A brief moment of levity can help ease escalating tension between litigants, without compromising fairness—particularly where, as here, it neither reflects bias nor influences the jury. The trial continued without incident. The Court also notes that it provided the jurors with two instructions concerning any comments made by the Court. First, prior to opening statements the Court instructed the jury:
"But nothing that this trial judge, nothing the Court may say or do during the course of the trial should be taken by you as an indication what your verdict should be."
Additionally, as part of the Court's final instructions to the jury before deliberations commenced, the Court instructed:
"During the trial, I occasionally asked questions of a witness when I thought clarification of their testimony was necessary. Neither these questions nor anything else I have said in the course of this trial was meant to suggest that I have an opinion about this case. If you have formed an impression that I do have an opinion, you must put it out of your mind and disregard it."
See, People v. Adams, 117 AD3d 104, 109 (1st Dept. 2014) (denying defendant's claim that trial judge's remarks deprived defendant of a fair trial, the appellate court held " the trial court did not take on the function and appearance of an advocate. Certain of the court's interventions were attempts to clarify expert testimony. Others, even if illadvised, may be characterized as light-hearted banter. However, taken as a whole, the court's interventions during the gun residue experts' testimony, which occurred on 44 of 70 pages of an almost 2000-page transcript, did not endorse the People's case and did not infect the jury's evaluation of that testimony [internal citations omitted][emphasis added]"). The Adams Court also noted that the trial court instructed the jury that it must not consider anything it said as an indicia of an "opinion on the case." Id. at 111.
Here, the trial record as a whole reflects that the Court maintained impartiality throughout. Defendant was provided with a fair trial and the jury was "not prevented from arriving at an impartial judgment on the merits." People v Moulton, 43 NY2d 944, 946 (1978).
Claims concerning preclusion of drug counselor, denial of challenge for cause, denial of preclusion, denial of adverse inference instruction, and CPL Article 245 discovery issues:
The Court previously ruled on Defendant's objections regarding the preclusion of a drug counselor's testimony, denial of a challenge for cause, denial of preclusion, denial of an adverse inference instruction, and CPL Article 245 discovery issues. These rulings were legally sound, and this trial Court perceives no error. Defendant may raise these preserved claims on direct appeal.
Defendant's argument concerning the Court's denial of a challenge of a juror for cause [*3]misrepresents the record. The Defendant had NOT exhausted all of his peremptory challenges and in fact still had two (2) peremptory challenges remaining after all 12 regular jurors were seated. Defendant and stand-by counsel were kept apprised of the remaining challenges, and at no point was Defendant misled about their availability.
Claim of legal insufficiency:
Defendant's claims of legal insufficiency with respect to the two counts of Criminal Possession of a Controlled Substance in the Third Degree are without merit.
"Legally sufficient evidence" means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof. CPL § 70.10. "When assessing the legal sufficiency of a jury verdict, [the court must] view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt." People v. Swartz, 235 AD3d 1098, 1099 (3rd Dept. 2025). Here, when viewed in the light most favorable to the People, the evidence was most certainly legally sufficient. The Defendant led law enforcement on a high-speed chase through the City of Ithaca while driving recklessly. After the Defendant was apprehended, the Defendant was found to be in possession of a total of 48 individually wrapped plastic baggies which contained identically packaged and meticulously weighed quantities of methamphetamine and heroin/fentanyl. Ten one-gram bags of methamphetamine were located in defendant's sweatshirt pocket. Defendant also had a large bag secreted inside his underwear, which contained six one-gram bags of methamphetamine, eleven ½ gram bags of methamphetamine, five ¼ gram bags of methamphetamine, four ½ gram bags of heroin/fentanyl mix and twelve ¼ gram bags of heroin/fentanyl mix. The NYSP lab tested the six 1-gram baggies of methamphetamine from defendant's underwear and those were all confirmed to be methamphetamine with an aggregate or total weight of 5.86 grams (more than 1/8 ounce). The lab tested one of the ½ gram bags of heroin/fentanyl and confirmed it to be heroin and fentanyl, narcotic drugs. Defendant also possessed two cell phones, $2,613 in cash, most of secreted it in his sock, and benefits cards belonging to others. There were no implements that would typically be used to consume drugs, either on defendant's person or in his vehicle.
The jury possessed legally sufficient, and in fact, overwhelming evidence that the Defendant possessed both heroin and methamphetamine with the intent to sell. Defendant's challenges as to legal sufficiency are DENIED. Defendant's motions for reductions are consequently also without merit and are DENIED. To the extent that Defendant raises additional arguments in support of his CPL §330.30(1) motion that are not expressly addressed herein, they have been considered and found to be without merit and are DENIED. 
Accordingly, Defendant's CPL §330.30(1) motion is DENIED.
Sentencing remains scheduled for July 1, 2025, at 1:30 p.m.
This constitutes the Decision and Order of the Court. A notice of appeal, if applicable, must be filed within thirty (30) days of the date of this decision.
Dated: June 30, 2025
Ithaca, New York
Hon. Scott A. Miller
Tompkins County Court Judge