832 P.2d 222

STATE of Arizona, Appellee,

v.

Jack Scott EMERSON, Appellant.

No. 1 CA–CR 91–0093.

Court of Appeals of Arizona, Division 1, Department D.

May 21, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Jon G. Anderson, Asst. Atty. Gen., Phoenix, for appellee.

Law Offices of Wendy F. White by Wendy F. White, Flagstaff, for appellant.

## OPINION

TAYLOR, Presiding Judge.

Jack Scott Emerson ("Emerson") appeals from the sentence imposed following his plea of guilty to one count of accomplice to armed robbery, a class 2 dangerous felony. The issue raised on appeal is whether there was a sufficient factual basis of "deadly weapon or dangerous instrument" to enhance the sentence for armed robbery. Because we find that a loaded pellet gun is a dangerous instrument and that there was a sufficient factual basis establishing the pellet gun was loaded, we affirm Emerson's sentence.

## FACTS

On November 17, 1990, Emerson and co-defendant William Leroy Wright robbed a Flagstaff convenience store at gun point. Wright entered the store, wearing a jacket, hat, and dark glasses. He approached the clerk and demanded money. When the clerk indicated she thought he was joking, Wright assured her that he was not joking and that he would "blow" her head off if she didn't give him the money. He then displayed what appeared to be a .45 caliber pistol under his pants waistband. The clerk then gave Wright approximately $144.00 from the cash register. Wright left the store and entered a car driven by Emerson, and they drove away.

Thereafter, the vehicle was stopped by a DPS officer who had received a description of the vehicle. Wright and Emerson were arrested for the robbery. The jacket, pistol, and hat were found inside the vehicle. Wright possessed $143.00 in cash.

Nida Ochoa, a hitchhiker whom Emerson and Wright had picked up, testified that prior to the robbery she overheard the two men speak of committing a robbery. She also stated that when Wright left the store, he removed his jacket, hat, and dark glasses.

Emerson entered a plea agreement whereby he agreed to plead guilty to one count of accomplice to armed robbery, a class 2 dangerous felony. The court accepted Emerson's plea and sentenced him to the presumptive term of 10.5 years. Emerson timely appealed.

## DISCUSSION

Emerson argues that because there was an insufficient factual basis to prove dangerousness, it was improper for the trial court to enhance his sentence pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–604(G). Emerson urges that in order to enhance his sentence for "dangerousness," the crime had to be committed by the use or exhibition of a deadly weapon or a dangerous instrument, or by the intentional or knowing infliction of serious physical injury. He argues that there is no contention the victim suffered any physical injury and that the factual basis established only the use of a *simulated* deadly weapon, not the use of an actual deadly weapon or dangerous instrument. Pursuing this argument, Emerson contends that sentence enhancement was improper because a simulated deadly weapon is not a deadly weapon or dangerous instrument. Because the enhancement was improper, Emerson asserts, his sentence should be reduced to seven years, the presumptive sentence for a non-dangerous class 2 felony. *See* A.R.S. §§ 13–701, 13–702(B).

The State argues that Emerson waived this issue when he pled guilty, citing *State v. Crocker*, 163 Ariz. 516, 517, 789 P.2d 186, 187 (App.1990) (guilty plea waives non-jurisdictional defenses). Here, the error complained of is an insufficient factual basis upon which a conviction was premised. An insufficient factual basis constitutes fundamental error. *E.g. State v. Wallace*, 151 Ariz. 362, 365, 728 P.2d 232, 235 (1986), *cert. denied*, 483 U.S. 1011, 107 S.Ct. 3243, 97 L.Ed.2d 748 (1987). Failure to object to fundamental error at the trial level does not constitute a waiver. *E.g. State v. Kuhlman*, 15 Ariz.App. 359, 361, 488 P.2d 996, 998 (1971). The issue, therefore, is appropriately before this court on appeal.

■ The State argues that even if this court has jurisdiction to hear this appeal, the record discloses a sufficient factual basis to uphold the court's finding of dangerousness. The State does not argue that the pellet gun herein was a deadly weapon; therefore, that issue is not before us. The State argues, however, that A.R.S. § 13–604(G) defines dangerous conduct as including the use or exhibition of a "dangerous instrument" and that the pellet gun used in the robbery qualifies for that designation. Our legislature has defined dangerous instrument as "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13–105(8). Our analysis then must begin with whether a pellet gun is a dangerous instrument.

Emerson argues that the factual basis supplied to the trial court failed to establish that the pellet gun was a dangerous instrument "readily capable of causing death or serious physical injury." Whether a pellet gun is a dangerous instrument is an issue of first impression in this state. While we are not bound by the law as announced in other jurisdictions, we may look to those jurisdictions for guidance on this issue.

In *State v. Alston*, 305 N.C. 647, 290 S.E.2d 614, 615 (1982), the defendant wielded a rifle during a robbery. At issue was whether the rifle was a pellet rifle or a BB rifle. *Id.* In deciding to submit the case to a jury because of this factual dispute, the supreme court nonetheless held that a pellet rifle was a dangerous instrument because its use endangered or threatened lives as opposed to a BB rifle which did not. *Id.* 290 S.E.2d at 616.

Other jurisdictions have likewise held that a loaded pellet gun is a dangerous instrument or a deadly weapon. *Lynn v. State*, 567 So.2d 1043, 1044 (Fla.Dist.Ct. App.1990); *State v. Harper*, 1 Haw.App. 481, 620 P.2d 1087, 1090 (1980); *cf. Clark v. State*, 191 Ga.App. 386, 381 S.E.2d 763, 765 (1989) (finding that an unloaded pellet gun was a deadly weapon).

We agree with those jurisdictions which hold that a loaded and operable pellet gun is a dangerous instrument. In examining whether a pellet gun was a weapon under its statute, the Montana supreme court noted that a pellet discharged from a pellet gun was a high-velocity projectile which was capable of inflicting "serious bodily injury," including lost vision. *State v. Matson*, 227 Mont. 36, 736 P.2d 971, 974 (1987). We can envision many serious injuries which might be inflicted by a high-velocity pellet. Suffice it to say that we find that a pellet gun can inflict bodily injury sufficiently serious to qualify the loaded weapon as a dangerous instrument.

■ Emerson next asserts that because the record does not indicate whether the pellet gun was operable and loaded, there can be no determination that the gun was "readily capable of causing death or serious physical injury." We do not read the record so narrowly. Co-defendant Wright stated to the convenience store clerk that if she did not give him the money, he would "blow" her head off. Wright then displayed the pellet gun. The words and conduct of the person using the gun, and presumably most knowledgeable of its condition and capabilities, clearly indicated that the gun was loaded, operable, and capable of inflicting serious or fatal injuries if discharged. Wright's statement was given to the court as part of the factual basis for the plea and was therefore a suitable factor in determining whether the weapon was operable and loaded. Neither Wright nor Emerson produced any evidence to refute the above statement or the conclusion that flows logically from it. Consequently, in the absence of contrary evidence, we find that what Wright said as he robbed the convenience store would be a sufficient factual basis to establish the gun's capability of "causing death or serious physical injury" at the time of the robbery.

## CONCLUSION

For the foregoing reasons, we conclude that there was a sufficient factual basis of "dangerousness" to enhance Emerson's sentence. We have reviewed the record for

**572**

fundamental error pursuant to A.R.S. § 13-4035 and have found none. The trial court's order sentencing Emerson to an enhanced sentence on one count of accomplice to armed robbery is affirmed.

GERBER and EHRLICH, JJ., concur.