8 P.3d 1156

The STATE of Arizona, Appellee,

v.

Joseph Edward CORDOVA, Appellant.

No. 2 CA–CR 99–0211.

Court of Appeals of Arizona,
Division 2, Department B.

Dec. 28, 1999.

Redesignated as Opinion and
Publication Ordered Feb. 15, 2000.

Review Denied Sept. 26, 2000.

Janet Napolitano, Arizona Attorney General By Paul J. McMurdie and Donna J. Lam, Tucson, Attorneys for Appellee.

Susan A. Kettlewell, Pima County Public Defender By Susan C.L. Kelly Tucson, Attorneys for Appellant.

## OPINION

HOWARD, Judge.

¶1 After a jury trial, appellant Joseph Cordova was convicted of armed robbery and aggravated assault with a deadly weapon or dangerous instrument, both dangerous nature offenses. He challenges the sufficiency of the evidence that he used a deadly weapon or dangerous instrument, the state's failure to disclose information about an anonymous tip, and the court's jury instructions on lesser-included offenses. We affirm because a pellet gun can be a deadly weapon, no material evidence was undisclosed, and the jury instructions adequately reflected the law.

### BACKGROUND

¶2 We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the verdicts. *State v. Marshall,* 193 Ariz. 547, ¶3, 975 P.2d 137, ¶3 (App.1998). Cordova entered a convenience store, pulled out a gun, pointed it at the store clerk, and demanded money. The clerk recognized Cordova as a regular customer. The store security camera videotaped the events, and another surveillance camera took photographs of the robbery.

¶3 The police received an anonymous tip on the 88–Crime telephone line that a gang member called "Turtle" had committed the robbery. The officers discovered eight gang members, including Cordova, with that nickname. Because Cordova lived near the store, the officers included his picture in the photographic lineup they showed the clerk. The clerk identified Cordova as the armed robber. A subsequent search of Cordova's residence yielded a hooded sweatshirt and a chrome pellet gun resembling items shown in photographs of the armed robbery. And Cordova was wearing a ring when he was arrested that matched the ring the surveillance photographs showed the armed robber had been wearing.

### DISCUSSION

#### A. Sufficiency of the Evidence

¶4 Cordova first claims a pellet gun is neither a deadly weapon nor a dangerous instrument and, therefore, there was insufficient evidence to sustain his aggravated assault conviction or the dangerous nature findings, both of which require the use of a deadly weapon or dangerous instrument. See A.R.S. §§ 13–1204(A)(2), 13–604(P). We will not reverse the conviction or the findings if they are supported by substantial evidence. *State v. Salman,* 182 Ariz. 359, 361, 897 P.2d 661, 663 (App.1994). Substantial evidence is evidence that a reasonable jury could accept as sufficient to establish guilt beyond a reasonable doubt. *State v. Fulminante,* 193 Ariz. 485, ¶24, 975 P.2d 75, ¶24 (1999).

¶5 A "deadly weapon" is "anything designed for lethal use," including a "firearm." A.R.S. § 13–105(13). A "firearm" is "any loaded or unloaded handgun, pistol, revolver, rifle, shotgun or other weapon which will or is designed to or may readily be converted to expel a projectile by the action of expanding gases ...." § 13–105(17) (emphasis added). It is irrelevant whether the pellet gun was operable at the time of the armed robbery, so long as it was not permanently inoperable. § 13–105(17). An officer testified at trial that the pellet gun found in Cordova's room uses carbon dioxide cartridges to propel the pellets. The jury also had an opportunity to view the pellet gun during its deliberations. Substantial evidence, therefore, supports the jury's conclusion that the pellet gun was a deadly weapon

for purposes of the aggravated assault conviction and the dangerous nature findings.[1] See *Commonwealth v. Sterling,* 344 Pa.Super. 269, 496 A.2d 789, 792 (1985) ("A carbon dioxide powered gun expels a projectile by the action of an explosive or the expansion of gas.").

### B. Disclosure

■ ¶ 6 Cordova next asserts that he was entitled to information about the anonymous 88–Crime telephone call and the names and addresses of all gang members known as Turtle. A defendant has a right to the disclosure of material evidence. See Ariz. R. Crim.Proc. 15.1(a)(7), 16A A.R.S.; *State v. Gulbrandson,* 184 Ariz. 46, 63, 906 P.2d 579, 596 (1995). "[E]vidence is material if there is a reasonable probability that its disclosure would have altered the result at trial." *State ex rel. Romley v. Superior Court,* 172 Ariz. 232, 238, 836 P.2d 445, 451 (App.1992). We review a trial court's failure to order the disclosure of the requested information for an abuse of discretion. *State v. Tankersley,* 191 Ariz. 359, ¶ 31, 956 P.2d 486, ¶ 31 (1998).

■ ¶ 7 Cordova claims he could have used the information about the anonymous tip to cross-examine the investigating officer to determine if she had been the source of the tip. But he has provided no support for his theory that the officer provided the tip. See *State v. Hatton,* 116 Ariz. 142, 150, 568 P.2d 1040, 1048 (1977) ("Discovery rules are not meant to be used for 'fishing expeditions.' "). Even if the officer were the source of the tip, that information was immaterial because the tip simply resulted in Cordova's photograph being included in the lineup. The officer could have included Cordova's picture on a mere suspicion or hunch, without a tip at all. And the police did not obtain a search warrant based on the tip; they obtained the warrant only after the victim had identified Cordova in the lineup. Moreover, Cordova has failed to provide any legal authority requiring the disclosure of information that results in the inclusion of a defen-

dant's photograph in a lineup. Finally, he does not explain why the lack of information on the tip rendered him "wholly unable" to challenge the identification process or the resultant search. See generally *State v. Williams,* 458 So.2d 1315, 1333 (La.App.1984) (identification procedure not suggestive if victim unaware that defendant's picture was added to lineup based on uncorroborated tip from unreliable informant). We therefore reject this argument.

■ ¶ 8 Cordova next contends he was entitled to the information about other gang members nicknamed Turtle. But this information also was immaterial. The victim's pretrial and in-court identifications were based on her recollection of the robber, not on his nickname.

¶ 9 Finally, Cordova does not challenge on appeal the victim's in-court identification, the admission of the gun and sweatshirt found in his trailer, or the admission of the ring he was wearing when he was arrested that matched the store camera's photographs of a ring visible on the armed robber's hand. Disclosure of the source of the tip or the names and addresses of the other gang members nicknamed Turtle, therefore, was not reasonably likely to have altered the verdicts. See *State ex rel. Romley,* 172 Ariz. at 238, 836 P.2d at 451. Under the facts in this case, the trial court did not abuse its discretion by not ordering disclosure of the information.

### C. Lesser-included Instructions

■ ¶ 10 Cordova also challenges the trial court's instructions on lesser-included offenses, contending they did not contain the "reasonable efforts" language mandated by *State v. LeBlanc,* 186 Ariz. 437, 440, 924 P.2d 441, 444 (1996). Cordova did not raise this issue below and has therefore waived all but fundamental error. *State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).

■ ¶ 11 In *State v. Wussler,* 139 Ariz. 428, 430, 679 P.2d 74, 76 (1984), the supreme

---

1. Although Cordova contends *State v. Emerson,* 171 Ariz. 569, 832 P.2d 222 (App.1992), held that a pellet gun was not a deadly weapon, the court in *Emerson* specifically stated: "The State does not argue that the pellet gun herein was a deadly weapon; therefore, that issue is not before us." *Id.* at 571, 832 P.2d at 224.

court upheld the requirement that a jury find the defendant not guilty of the greater crime before considering the lesser. But, in *Le-Blanc*, it found the better practice was to require only that the jury consider the lesser charge after reasonable, but unsuccessful, efforts to reach a verdict on the greater charge. 186 Ariz. at 438, 924 P.2d at 442. We view the jury instructions given here in their entirety to determine if they adequately reflected the law. *State v. Gallegos*, 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994). "We will reverse only if the instructions, taken together, would have misled the jurors." *State v. Doerr*, 193 Ariz. 56, ¶ 35, 969 P.2d 1168, ¶ 35 (1998), cert. denied, 526 U.S. 1073, 119 S.Ct. 1471, 143 L.Ed.2d 555 (1999).

¶ 12 The jury instructions given here did not contain the unanimous acquittal language that the court in *LeBlanc* found problematic. They simply stated that the jury could find Cordova guilty of the lesser offense if the evidence did not show beyond a reasonable doubt that he had committed the greater. And the trial court read the jury the verdict forms, which specifically required only reasonable efforts to decide the greater charge before considering the lesser, as mandated by *LeBlanc*. The jury instructions as a whole, therefore, adequately reflected the law. We find no error, much less, fundamental error.

## CONCLUSION

¶ 13 Cordova's convictions and sentences are affirmed.

CONCURRING: PHILIP G. ESPINOSA, Chief Judge, and J. WILLIAM BRAMMER, JR., Presiding Judge.