NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL A. ABBOTT, *Appellant.*

No. 1 CA-CR 14-0046
FILED 5-26-2015

Appeal from the Superior Court in Maricopa County
No.  CR 2012-007859-001
The Honorable Robert E. Miles, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

The Nolan Law Firm, PLLC, Mesa
By Cari McConeghy Nolan, Todd E. Nolan
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Chief Judge Diane M. Johnsen joined.

**O R O Z C O**, Judge:

**¶1**          Michael A. Abbott appeals his convictions and sentences for aggravated assault and endangerment.  Abbott argues that the trial court erred by denying his motion to continue, admitting evidence of his blood alcohol content (BAC) and giving a deficient jury instruction.  He also claims that he was denied a fair trial due to prosecutorial misconduct.  For reasons that follow, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**          During the early morning hours of November 26, 2011, Abbott drove through warning flares and rear-ended a tow truck parked on the roadway at an intersection closed by police due to an unrelated rollover accident.  The police officer maintaining the flares in the roadway to signal the traffic diversion had to jump out of the way to avoid being struck by Abbott's vehicle.  Three other officers were near the tow truck when Abbott's vehicle hit it.

**¶3**          The passenger in Abbott's vehicle was seriously injured in the collision.  Abbott had no outward signs of trauma, but he appeared dazed and stumbled as he walked to the officer's vehicle.  Abbott denied drinking, but his eyes were bloodshot and watery and his breath smelled of an alcoholic beverage.  An officer attempted to perform a horizontal gaze nystagmus test, but Abbott either would not or could not participate in the test.

**¶4**          Paramedics arrived on the scene and air-evacuated Abbott and his passenger to the hospital.  A hospital nurse who attended to Abbott

---

[1]          On appeal, this court views the evidence in the light most favorable to sustaining the convictions.  *State v. Karr*, 221 Ariz. 319, 320, ¶ 2 (App. 2008).

provided the police with two vials of Abbott's blood. Subsequent testing of the blood revealed that Abbott's BAC was 0.255 percent.

¶5        A grand jury indicted Abbott on one count of aggravated assault, a class 3 felony and dangerous offense, and four counts of endangerment, each a class 6 felony and dangerous offense. After a jury trial, Abbott was found guilty of aggravated assault and one count of endangerment as charged but was acquitted of the three other endangerment charges. The trial court sentenced Abbott to a presumptive, concurrent prison term of 7.5 years on the aggravated assault conviction and 2.5 years on the endangerment conviction. Abbott timely appealed. This court has jurisdiction pursuant to the Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.1, 13–4031, and 13–4033.A.1 (West 2015).[2]

## DISCUSSION

### I.        Motion to Continue Was Properly Denied.

¶6        Abbott argues the trial court violated his rights to due process and a fair trial by denying his motion to continue the trial. We review a denial of a motion to continue for abuse of discretion. *State v. Barreras*, 181 Ariz. 516, 520 (1995). The trial court does not abuse its discretion in denying a continuance unless, considering all the circumstances of the case, the decision "substantially prejudiced the defendant." *Id.* (citation omitted).

¶7        Abbott filed an untimely motion to continue the day before trial was set to begin. At the hearing on the motion, Abbott explained he was requesting the continuance because he had just learned that drug charges were recently filed against him in an unrelated matter and he wanted to determine if a global plea agreement could be reached with the State. In denying the motion, the trial court stated that the parties were free to discuss a global resolution of the two cases but the trial would proceed as scheduled.

¶8        The trial court acted well within its discretion in denying the motion to continue. It had already granted several continuances at Abbott's request and the charges in this case were more than a year old. Moreover, the motion to continue had nothing to do with Abbott's ability to present his defense or obtain a fair trial, but rather a delay was requested solely to engage in plea bargaining. There is, however, no right to a plea agreement

---

[2]        Absent material revisions after the relevant dates, we cite the current version of statutes and rules unless otherwise indicated.

in Arizona.  *State v. Morse*, 127 Ariz. 25, 31 (1980).  Abbott fails to show that his rights to due process and a fair trial were substantially prejudiced by the denial of the motion to continue.

## II.     Admission of Blood Evidence Was Proper.

**¶9**         The State presented evidence of Abbott's BAC to prove that his conduct in causing the collision was reckless.  Abbott argues the admission of this evidence was error because: 1) there was insufficient foundation to admit the BAC evidence, and 2) prosecutorial misconduct occurred in the admission of the BAC evidence because the police obtained his blood without a warrant.  We review the admission of evidence for abuse of discretion.  *State v. Robinson*, 165 Ariz. 51, 56 (1990).

**¶10**         Because Abbott did not object to the admission of the BAC evidence in the trial court based on the arguments advanced on appeal, he has forfeited appellate review of these issues except for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005); *see also State v. Hamilton*, 177 Ariz. 403, 408-09 (App. 1993) (holding that an objection to evidence on one ground fails to preserve other issues on appeal).  To show fundamental error, Abbott "bears the burden to establish that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice."  *State v. James*, 231 Ariz. 490, 493, ¶ 11 (App. 2013) (citations and internal quotations omitted).

### A.  Insufficient Foundation

**¶11**         Abbott argues there was insufficient foundation to admit the BAC evidence because the State failed to establish a proper chain of custody for the blood drawn from him.  Arizona Rule of Evidence 901(a) sets forth the requirements for authenticating and identifying evidence and "governs the sufficiency of an evidentiary foundation."  *State v. Lavers*, 168 Ariz. 376, 386 (1991).  "An item is authenticated when there is 'evidence sufficient to support a finding that the [item] . . . is what [the] proponent claims [it is].'" *State v. McCray*, 218 Ariz. 252, 256, ¶ 9 (2008) (quoting Arizona Rule of Evidence 901(a)).  When the foundation for the admission of evidence is based on a chain of custody, "evidence can be admitted 'notwithstanding the inability of the state to show a continuous chain of custody . . . unless a defendant can offer proof of actual change in the evidence, or show that the evidence has, indeed, been tampered with.'"  *Id.* at ¶ 11 (quoting *State v. Ritchey*, 107 Ariz. 552, 557 (1971)).

**¶12**         Abbott makes no showing his blood was altered, changed, or tampered with before being tested.  His argument on appeal is limited to the discrepancy in times testified to by the nurse and the officer as to when

the blood was transferred to the officer and the fact that there were three vials of blood in the blood kit rather than only two as the officer testified.

¶13        The officer testified that the blood vials were given to him by the nurse two minutes after the blood was drawn, but the nurse testified that the transfer would not have occurred for a minimum of five minutes after it was drawn. This timing discrepancy does not establish any gap in the chain of custody. The nurse testified that the blood vials were in his possession from the time the blood was drawn until the vials were transferred to the officer. The inconsistency between the testimony of the nurse and the officer as to the precise times when the blood was drawn and when it was given to the officer goes to the weight of the evidence, not its admissibility. *See McCray*, 218 Ariz. at 257, ¶ 15.

¶14        Likewise, the fact that there were three vials of blood in the blood kit received by the Department of Public Safety laboratory for testing when the officer testified to only receiving two from the nurse does not render admission of the BAC evidence erroneous. The criminalist who tested the blood testified that the blood kit was sealed when he received it and showed no signs of tampering. Moreover, all three vials had identical labels identifying them as containing blood drawn from Abbott. This evidence, together with the nurse's testimony that he was certain that the vials he gave the officer contained only Abbott's blood, was more than sufficient to permit a finding that the blood tested by the criminalist was Abbott's, notwithstanding that the officer recalled receiving only two vials.

### B.   Prosecutorial Misconduct

¶15        Following the third day of trial, Abbott moved to suppress the BAC evidence, arguing his blood was improperly collected because a search warrant was not obtained for the blood draw. Abbott based his motion on *Missouri v. McNeely*, 133 S. Ct. 1552, 1563 (2013), which rejected the argument that the metabolization of alcohol creates a *per se* exigency justifying an exception to the Fourth Amendment's search warrant requirement for nonconsensual blood testing in all drunk-driving cases. The Supreme Court held that "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case . . . it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.* In ruling on Abbott's motion to suppress, the trial court did not decide whether the warrantless collection of his blood was unconstitutional under *McNeely*, but it instead denied the motion as

untimely and, in the alternative, that the BAC evidence would be admissible under the good faith exception to the exclusionary rule.

¶16        On appeal, Abbott does not challenge the trial court's ruling denying his motion to suppress the BAC evidence.  Instead, Abbott attempts to re-characterize the admission of the BAC evidence as one of prosecutorial misconduct, arguing the prosecutor violated his right to due process by introducing "constitutionally defective" evidence.  As refined at oral argument, Abbott's claim is specifically that prosecutorial misconduct occurred when the prosecutor failed to inform Abbott's counsel at a pre-trial settlement conference that the first blood draw performed on Abbott was done without a warrant.  By failing to note this at the settlement conference, Abbott contends the prosecutor knowingly allowed the jurors to rely on unconstitutional evidence.

¶17        Prosecutorial misconduct "is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial."  *State v. Aguilar*, 217 Ariz. 235, 238-39, ¶ 11 (App. 2007) (quoting *Pool v. Superior Court*, 139 Ariz. 98, 108–09 (1984)).  The fatal flaw in Abbott's effort to frame his claim on appeal as prosecutorial misconduct is that Abbott can merely speculate that the prosecutor knowingly withheld information from Abbott's counsel at the settlement conference.  Moreover, even if the prosecutor knew the evidence from the first blood draw was performed without a warrant, there is simply no misconduct by a prosecutor in relying on evidence deemed admissible by a trial court. *See State v. Dixon*, 226 Ariz. 545, 549, ¶ 8 (2011) (stating it is "plainly not misconduct" that a prosecutor presented evidence that the trial court ruled admissible); *State v. Skinner*, 110 Ariz. 135, 147 (1973) (holding "we find no specific misconduct on the part of the prosecutor in calling [the witness] to the stand since the court had given permission for him to do so").  This is true even if it is subsequently determined that the trial court erred in its ruling. *See State v. Corrales*, 138 Ariz. 583, 589 (1983) (noting that a prosecutor who relied on a trial court ruling later found erroneous "did not commit misconduct by following the order which the court had made")

¶18        Given our conclusion that Abbott fails to state a viable claim of prosecutorial misconduct, we need not address Abbott's contention that the warrantless hospital blood draw was unconstitutional under *McNeely* or the State's argument that, because Abbott's blood was collected before the decision in *McNeely* in accordance with existing Arizona law, the BAC

evidence would be admissible in any case under the good faith exception to the exclusionary rule. *See Davis v. United States*, 131 S. Ct. 2419, 2423-24 (2011) (holding "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule").

### III. Endangerment Instruction.

**¶19**        Abbott contends the trial court erred in instructing the jury on the offense of endangerment. He claims the endangerment instruction was an incorrect statement of the law because it did not require that the jury find as an element of the offense that he was aware of and disregarded a substantial risk that his conduct would cause imminent death.

**¶20**        "The purpose of jury instructions is to inform the jury of the applicable law in understandable terms." *State v. Noriega*, 187 Ariz. 282, 284 (App. 1996). We review the instructions as a whole "to determine if they adequately reflected the law." *State v. Cordova*, 198 Ariz. 242, 245, ¶ 11 (App. 1999). "We will reverse only if the instructions, taken together, would have misled the jurors." *State v. Doerr*, 193 Ariz. 56, 65, ¶ 35 (1998).

**¶21**        "A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury." A.R.S. § 13-1201.A. Endangerment is a class 6 felony when it "involv[es] a substantial risk of imminent death. . . . In all other cases, it is a class 1 misdemeanor." A.R.S. § 13-1201.B. The instruction given by the trial court tracked the statutory language for felony endangerment:

> The crime of endangerment requires proof that the defendant recklessly endangered another person with a substantial risk [of] imminent death.

**¶22**        The trial court also instructed the jury on the definition of "recklessly" as follows:

> Recklessly means that a defendant is aware of and consciously disregards a substantial and unjustifiable risk that conduct will result in physical injury. The risk must be such that disregarding it is a gross deviation from what a reasonable person would do in the situation.
>
> A person who created such a risk, but was unaware of it solely because of voluntary intoxication also acts recklessly with respect to such a risk.

This language fully and correctly instructed the jury on all the elements of endangerment. The trial court did not err in instructing the jury on the offense of endangerment.

## IV.    Closing Argument

¶23        Abbott contends he was denied a fair trial because the prosecutor brought improper matters to the jury's attention during closing argument. Specifically, Abbott challenges references by the prosecutor to public campaigns against drunk driving such as Mothers Against Drunk Driving and electronic highway billboard slogans that state "Drive Hammered Get Nailed" in arguing that Abbott was reckless:

> And in today's day [and] age where the impact of impaired drivers is so publicized and so well known, you got organizations like MADD, Mothers Against Drunk Driving, there [are] new stories all the time. You can't even drive your car in this city over a Labor Day weekend without seeing those signs on the freeway above you, saying something, drive hammered get nailed, those kinds of things.

> You cannot be part of today's society and not know that getting behind the wheel when you are a .255 blood alcohol concentration is not safe.

> In fact, it is senseless.

> Or wait I have to sound like a lawyer. It is reckless.

¶24        Abbott argues that the prosecutor's references to the public campaigns against drunk driving were improper because no evidence was introduced at trial regarding them. Because Abbott did not object at trial to the prosecutor's alleged misconduct, our review of this claim is limited to fundamental error. *State v. Roque*, 213 Ariz. 193, 228, ¶ 154 (2006).

¶25        To determine whether a prosecutor's remarks are improper, we consider whether they called to the jury's attention matters it would not be justified in considering, and the probability, under the circumstances, that it was influenced by the remarks. *State v. Newell*, 212 Ariz. 389, 402, ¶ 60 (2006). A claim of prosecutorial misconduct warrants reversal only if "(1) misconduct is indeed present [,] and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial." *State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004) (citation omitted).

¶26 "[P]rosecutors have wide latitude in presenting their closing arguments to the jury[.]" *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000). Though it is improper to refer to matters not in evidence during closing argument, references may be made to subjects that are "common knowledge or are illustrations drawn from common experience, history or literature." *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 48 (App. 1996). Abbott has not shown that the prosecutor ran afoul of this limitation in arguing that everyone in today's society, including Abbott, cannot help but know that drunk driving is unsafe in light of the ubiquitous public campaigns directed at that subject. On this record, Abbott has not shown fundamental error amounting to reversible prosecutorial misconduct in the prosecutor's closing argument.

**CONCLUSION**

¶27 For the reasons stated, we affirm Abbott's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama