NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GREGORY HARRY WOODY, JR., *Appellant.*

No. 1 CA-CR 14-0851
FILED 11-17-2015

Appeal from the Superior Court in Coconino County
No. S0300CR201300673
The Honorable Dan R. Slayton, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Patricia K. Norris joined.

---

**G O U L D**, Judge:

¶1        Gregory Harry Woody, Jr., appeals from his convictions and sentences on two counts of kidnapping, class two felonies; five counts of sexual assault, class two felonies; one count of sexual abuse, a class five felony; and three counts of aggravated assault, class six felonies. Woody argues the trial court erred by: 1) admitting other act evidence; 2) denying a motion for mistrial; 3) refusing to hold a *Dessureault* hearing; 4) admitting improper expert testimony; 5) admitting inadmissible hearsay; and 6) giving an incorrect limiting instruction. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Woody's convictions stem from assaults committed on three separate occasions against three different victims. In addition to being choked and beaten, two of the three victims were sexually assaulted. The third victim was also beaten and had her clothing torn off; however, the assailant fled before actually sexually assaulting her. The police connected Woody to all three assaults based on his DNA profile matching DNA recovered from each of the victims.

¶3        Woody was charged with multiple counts of kidnapping, sexual assault, and aggravated assault, and one count each of sexual abuse and attempted sexual assault in regards to the assaults committed against the three victims. Upon trial to a jury, Woody was acquitted of kidnapping and attempting to sexually assault the one victim where he fled prior to committing any sexual assault, but found guilty of the remaining eleven counts as charged. The trial court sentenced Woody to consecutive and concurrent aggravated prison terms totaling 113.6 years. Woody timely appealed.

**DISCUSSION**

*A.    Admission of Other-Act Evidence*

**¶4**        Woody contends the trial court erred in admitting other act evidence in violation of Arizona Rule of Evidence 404(b).  Specifically, he argues the trial court should not have admitted evidence of his encounter with an undercover female police officer several weeks after the last of the three assaults, which led to the police obtaining a buccal swab from him for DNA analysis.  We review the admission of other act evidence under Rule 404(b) for abuse of discretion.  *State v. Gulbrandson*, 184 Ariz. 46, 60 (1995).

**¶5**        Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Such other-act evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Ariz. R. Evid. 404(b).  When other act evidence "is offered for a non-propensity purpose, it may be admissible under Rule 404(b), subject to Rule 402's general relevance test, Rule 403's balancing test, and Rule 105's requirement for limiting instructions in appropriate circumstances."  *State v. Ferrero*, 229 Ariz. 239, 242, ¶ 12 (2012).  In addition, the State must prove by clear and convincing evidence the other act occurred and the defendant committed the act.  *State v. Terrazas*, 189 Ariz. 580, 584 (1997).

**¶6**        The challenged other act evidence consisted of testimony by the undercover officer.  As part of a multi-agency effort to apprehend the serial rapist, the officer posed as an intoxicated female in the downtown area near a bar where the three victims came in contact with their assailant. The officer first observed Woody standing outside the bar, peering in the window.  After speaking to Woody and telling him she was trying to get to her stepbrother's house, Woody asked if he could give her a ride.  When the officer declined, Woody accompanied her as she acted like she was walking to her fictional stepbrother's house.  As they walked, Woody made several additional offers of a ride and attempted to hold her hand, pull her next to him, kiss her, and put his hand under her clothes.  At one point, Woody picked the officer up and threw her over his shoulder, telling her that he was not going to let her walk.  The officer testified that as she attempted to free herself, Woody put her back down because there were people around and it appeared he did not want to make a scene.  When Woody was unsuccessful in getting the officer to ride with him, he drove off in his truck. Before he left, however, the officer obtained the license number and used it to get his Woody's name and address.  With this information, a detective

contacted Woody at his home several days later and was able to get a buccal swab from him for DNA analysis.

¶7            There was no abuse of discretion by the trial court in allowing admission of the other act evidence.  First, there was clear and convincing evidence of the other-act in that the officer testified about her contact with Woody.  *See State v. Vega*, 228 Ariz. 24, 29, ¶ 19 n.4 (App. 2011) (noting uncorroborated testimony by victim is sufficient to establish proof beyond a reasonable doubt that an incident occurred).  Second, the trial court could reasonably conclude the other-act evidence was relevant under Rule 402 for the non-character purpose of proving defendant's identity as the assailant by connecting him to both the area and time of day where the victims first encountered their assailant, use of similar methods to lure the victims to isolated areas, escalated use of force, and a vehicle consistent with one involved in two of the three assaults.  *See* Ariz. R. Evid. 401 (defining "relevant evidence"); *State v. Oliver*, 158 Ariz. 22, 28 (1988) (observing "standard of relevance is not very high").

¶8            Third, the trial court found that the evidence was not subject to preclusion as unfairly prejudicial under Rule 403.  "Because the trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice, the trial court has broad discretion in this decision."  *State v. Connor*, 215 Ariz. 553, 564, ¶ 39 (App. 2007) (citation and internal quotation marks omitted).  "Evidence is unfairly prejudicial only if it has an undue tendency to suggest a decision on an improper basis, such as emotion, sympathy, or horror."  *Gulbrandson*, 184 Ariz. at 61.  The trial court acted well within its discretion in this decision given that the other act evidence did not involve felonious acts, and therefore "did not pose a substantial danger of unfair prejudice or confusion of the issues."  *Vega*, 228 Ariz. at 30, ¶ 22-24.

¶9            Finally, the trial court gave a limiting instruction pursuant to Rule 105 on proper use of the other-act evidence by the jury.  Because the other-act evidence satisfied all the requirements for admission as non-propensity evidence under Rule 404(b), there was no error in its admission.

*B.   Denial of Motion for Mistrial*

¶10           In describing her encounter with Woody, the undercover officer testified that at one point Woody picked her up and put her over his shoulder.  She testified that she moved and wiggled to get away, and that Woody eventually put her down because "he didn't want to make a scene" in front of some other people that were walking nearby.

¶11    In ruling that the State could introduce evidence of Woody's interaction with the undercover officer, the trial court ordered that there was to be no opinion testimony or conclusions from the officer about what Woody's conduct meant.  No objection was raised to the officer's testimony while she was testifying, but during a subsequent recess Woody moved for a mistrial, arguing that the officer's comment "he didn't want to make a scene" violated the trial court's order.  The trial court denied the motion, stating the officer's testimony could be considered a violation, but found it was not intentional and that there was no prejudice to Woody.

¶12    A declaration of mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted."  *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003) (citation omitted).  We review a trial court's denial of a motion for mistrial for abuse of discretion and reverse only where there is a "'reasonable probability' that the verdict would have been different had the [improper] evidence not been admitted."  *State v. Hoskins*, 199 Ariz. 127, 142–43, ¶ 57 (2000) (citation omitted).

¶13    A mistrial is not required every time a witness unexpectedly volunteers an inadmissible statement.  *State v. Adamson*, 136 Ariz. 250, 262 (1983).  Instead, the remedy rests within the sound discretion of the trial court, which must evaluate the situation and decide an appropriate course of action in light of the specific facts and circumstances presented.  *Id.*  We give deference to the trial court's ruling because it is in the best position to evaluate "the atmosphere of the trial, the manner in which the objectionable statements were made, and the possible effect it had on the jury and the trial."  *State v. Bible*, 175 Ariz. 549, 598 (1993) (citation omitted).

¶14    Here, the officer's remark that Woody put her down because he did not want to make a scene was brief and not the sort of comment that would cause the jury to react negatively to Woody.  Nor is there anything indicating that the prosecutor intentionally elicited the remark or that the jury was influenced by it.  Under these circumstances, the trial court did not abuse its discretion in denying the motion for mistrial.  *State v. Miller*, 234 Ariz. 31, 40, ¶ 25 (2013).

   C.   *Refusal to Hold Dessureault Hearing*

¶15    Woody argues that the trial court erred by refusing to hold a hearing pursuant to *State v. Dessureault*, 104 Ariz. 380 (1969), in regards to in-court identifications by two of the victims.  We review this issue for abuse of discretion.  *State v. Prion*, 203 Ariz. 157, 160, ¶ 14 (2002).

¶16 The purpose of a *Dessureault* hearing is to determine whether a pre-trial identification procedure was unduly suggestive. 104 Ariz. at 384. At such a hearing, it is the State's burden to prove by clear and convincing evidence that the pretrial procedure employed by the police was not unduly suggestive and would not taint the in-court identification. *Id.* "Pretrial identifications which are fundamentally unfair implicate the due process clause of the Fourteenth Amendment." *Prion*, 203 Ariz. at 160, ¶ 14. To establish a due process violation, a defendant must show "the circumstances surrounding the pretrial identification created a substantial likelihood of irreparable misidentification and that the [S]tate was responsible for the suggestive pretrial identification." *Id.*

¶17 There was no abuse of discretion by the trial court in denying the request for a *Dessureault* hearing. There is no State involvement in any pretrial identification of Woody by the victims. Neither of the two victims made a pretrial identification of Woody to the police, nor were they even shown a lineup that included Woody. Thus, there was no need to conduct a hearing on the suggestibility of non-existent police procedures involving Woody. *See State v. Cartwright*, 155 Ariz. 308, 311 (1987) ("[T]here was no need to hold a *Dessureault* hearing because the witness had not participated in any pretrial identification procedures.").

¶18 During cross-examination, the two victims testified that they recognized Woody as their assailant after independently viewing pictures of him published in the Arizona Daily Sun following his arrest. Woody concedes that our supreme court held in *Prion* that a defendant's picture published in a newspaper does not constitute "[S]tate action," but urges that this holding be changed, arguing that the booking photo published in the newspaper must have been obtained from the State and therefore should be considered "[S]tate action." *See Prion*, 203 Ariz. at 160, ¶ 15. As an intermediate appellate court, we are bound by our supreme court's decisions and cannot modify, disregard, or overrule them. *State v. Smyers*, 207 Ariz. 314, 318, ¶ 15 n.4 (2004).

¶19 Additionally, we do not agree with defendant's contention that the police, by providing the booking photo published in the newspaper, engaged in state action requiring a *Dessureault* hearing. The newspaper was responsible for publishing the photograph, not the police, and there is no evidence that the police arranged for or encouraged the victims' surreptitious viewing of the photograph. *See State v. Nordstrom*, 200 Ariz. 229, 241, ¶¶ 23-24 (2001) (holding there was no state action potentially tainting a pretrial identification where a witness identified the

defendant based on a news broadcast of his arraignment). Accordingly, we find no error.

### D. Admission of Expert Testimony

**¶20** Over objection, the forensic sexual assault nurse examiner who examined the victims following the assaults was permitted to testify that strangulation interferes with a person's ability to remember certain things that occur during traumatic situations, but that memory may return over time. Woody argues the trial court erred in allowing this testimony.

**¶21** The sole objection raised by Woody during the nurse's testimony was lack of foundation. However, during a recess after the nurse had completed her testimony, Woody moved to strike the testimony on the effects of strangulation, re-urging his foundation objection and additionally arguing that the testimony did not otherwise meet the standards for admissibility under Rule of Evidence 702. The trial court denied the motion to strike, ruling that the proper foundation had been laid for the testimony. We review a trial court's rulings on the admissibility of expert testimony for abuse of discretion. *State v. Boyston*, 231 Ariz. 539, 544, ¶ 14 (2013).

**¶22** Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

**¶23** "Whether a witness is qualified as an expert is to be construed liberally." *State v. Delgado*, 232 Ariz. 182, 186, ¶ 12 (App. 2013). "If an expert meets the 'liberal minimum qualifications,' her level of expertise goes to credibility and weight, not admissibility." *Id.*; *see also State*

*v. Davolt*, 207 Ariz. 191, 210, ¶ 70 (2004) ("The degree of qualification goes to the weight given the testimony, not its admissibility.").

¶24            Here, the witness was a licensed registered nurse with nearly forty years of experience, including extensive experience with sexual assault victims.  In addition, the witness testified that she had received training through the International Association of Forensic Services on the topics of effects of strangulation, memory loss, and the brain.  Given this witness's training and experience, the trial court did not err in concluding that the witness had sufficient specialized knowledge to testify as an expert on the effects of strangulation.

¶25            On appeal, Woody argues that the nurse's expert testimony regarding strangulation and memory should not have been admitted because the testimony did not satisfy the four subsections to Rule 702.

¶26            Rule 702 was amended in 2012 to include the subsections to conform to "the reliability-assessment framework" announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *State v. Salazar-Mercado*, 234 Ariz. 590, 593, ¶ 9 (2014).  "The amended rule imposes a 'gatekeeper' obligation on trial judges to admit only relevant and reliable expert testimony." *Id*.  However, the comment to Rule 702 explains that the 2012 amendment was not intended to preclude expert testimony based on experience.  *See* Ariz. R. Evid. 702, Comment to 2012 Amendment ("The amendment is not intended to supplant traditional jury determinations of credibility and the weight to be afforded otherwise admissible testimony, nor is the amendment intended to permit a challenge to the testimony of every expert, preclude the testimony of experience-based experts, or prohibit testimony based on competing methodologies within a field of expertise.").

¶27            Woody did not request a *Daubert* hearing or make an offer of proof to challenge the general admissibility of the expert testimony, and there is nothing in the record indicating that the testimony by the sexual assault nurse examiner on the effect of strangulation on memory loss and retrieval is not the type of expert testimony properly admissible under Rule 702.  *See Delgado*, 232 Ariz. at 187, ¶ 17 (upholding testimony under Rule 702 by physician as "strangulation expert" based on medical training and experience).  Accordingly, on this record, we are unable to conclude the trial court erred in admitting the nurse's expert testimony.

E. *Admission of Hearsay Evidence*

**¶28**        Woody argues that the trial court erred by admitting hearsay evidence during the prosecutor's cross-examination of him.  At issue are statements made by Woody during a police interview that his mother-in-law told him about a flashlight missing from their vehicle.  We review a trial court's ruling on the admissibility of evidence under the hearsay rule for abuse of discretion.  *State v. Tucker*, 205 Ariz. 157, ¶ 41 (2003).

**¶29**        A flashlight was recovered at the scene of the first assault.  During cross-examination at trial, Woody agreed that when a detective first asked him about a flashlight in his vehicle when interviewed following his arrest, he denied having any knowledge of it.  Upon further questioning by the prosecutor, Woody acknowledged that his initial answer to the detective's question was false.  When the prosecutor began questioning Woody about his subsequent statements to the detective indicating he had knowledge of a  flashlight in the vehicle, defense counsel objected on hearsay grounds to the prosecutor confronting Woody with the statements he made about his mother-in-law telling him about the flashlight missing from the vehicle.  The trial court overruled the objection and permitted the prosecutor to question Woody about his statements to the detective.

**¶30**        Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted and is generally inadmissible.  Ariz. R. Evid. 801(c), 802.  However, statements by a party opponent, regardless of their nature, are not hearsay.  *See* Ariz. R. Evid. 801(d)(2)(A) (providing that statements by an opposing party are not hearsay); *State v. Cruz*, 218 Ariz. 149, 161, ¶ 51 (2008) (holding defendant's out-of-court, inculpating statement to police officer is party admission under Rule 801(d)(2)).  It is not essential for admission that the party have firsthand knowledge of the matter asserted in his statement.  Joseph M. Livermore, et al., *Arizona Law of Evidence* § 801:6, at 480 (Rev. 4th ed. 2008).  "The only limitation . . . to the use of an opposing party's words is the rule of relevance."  *Id*. at 482.  Here, no relevance objection was raised to Woody's statements and there is no question that his statements were relevant in light of the flashlight found at the scene and his initial false denial of knowledge of the flashlight.  There was no error by the trial court in overruling the hearsay objection to Woody's statements regarding his knowledge of the flashlight.

F. *Limiting Instruction for Other-Act Evidence*

**¶31**        The trial court instructed the jury with respect to the other-act evidence as follows:

Evidence of other interactions with [an undercover police officer] has been presented. You may consider these interactions only if you find that the State has proved by clear and convincing evidence that the defendant committed these acts. You may only consider these acts to establish the defendant's intent, plan, or identity. You must not consider these acts to determine the defendant's character or character trait or to determine that the defendant acted in conformity with the defendant's character or character trait and therefore committed any of the charged offenses.

**¶32** Woody argues that the portion of the instruction informing jurors that they "may only consider these acts to establish the defendant's intent, plan, or identity" is an incorrect statement of the law. According to Woody, the use of the phase "to establish" tells the jurors "that if they find [his] acts with [the officer] occurred, that in itself establishes his identity as the assailant in this case, notwithstanding the relative strength or weakness of other identification evidence." We disagree.

**¶33** "The purpose of jury instructions is to inform the jury of the applicable law in understandable terms." *State v. Noriega*, 187 Ariz. 282, 284 (App. 1996). We review the instructions as a whole "to determine if they adequately reflected the law." *State v. Cordova*, 198 Ariz. 242, 245, ¶ 11 (App. 1999). "We will reverse only if the instructions, taken together, would have misled the jurors." *State v. Doerr*, 193 Ariz. 56, 65, ¶ 35 (1998).

**¶34** The language of the limiting instruction fully and correctly instructed the jury on the limited use of the other-act evidence. Read in context, the challenged language merely informed the jury of the limited purposes for which evidence of Woody's interaction with the undercover officer could be considered. There is nothing in the instruction requiring that the jury find that the other-act evidence proved "defendant's intent, plan, or identity," nor did the instruction direct the jury to ignore any other evidence they found pertinent to guilt or innocence.

**¶35** Additionally, in reading the jury instructions as a whole, it is clear the subject instruction did not invite the jurors to disregard other evidence relevant to Woody's identity. The jurors were instructed to "consider what testimony to accept and what to reject" in deciding the facts of this case. Further, the instruction regarding the victim's in-court identifications specifically advised the jurors to "consider any other evidence in establishing the identity of the defendant." The jurors were also

instructed to "determine the importance to be given to the evidence regardless of whether it is direct or circumstantial."

¶36 Accordingly, the trial court did not err in instructing the jury on other-act evidence.

## CONCLUSION

¶37 For the foregoing reasons, we affirm Woody's convictions and resulting sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama